### RŌYAL BAKING POWDER CO. v. RAYMOND.

(Circuit Court, N. D. Illinois.  November 2, 1895.)

1. TRADE-MARK—GOOD WILL.
   A trade-mark is a notice indicating origin. It cannot exist—that is, be the subject of ownership—apart from a business, or the good will thereof.

2. SAME—EXTINGUISHMENT OF RIGHT REGARDLESS OF INTENT.
   Defendant was proprietor of a business which ceased in 1871. As a minor feature thereof he compounded and sold baking powder, and marked the word "Royal" on his cans. It was not shown that the good will of his business remained extant or of value for any time after the cessation of said business in 1871, or that the word "Royal" retained for any time in the trade any significance as a mark for the article once compounded by defendant. In 1894 defendant recommenced the baking-powder business, and the use of said word as a mark. *Held*, that the earlier use by defendant does not strengthen the later, as against a competitor whose use of said word as a mark for baking powder has been continuous and exclusive since 1873; and this regardless of what the intent of defendant with respect to said word may have been during the 23 years from 1871 to 1894.

3. SAME—ABANDONMENT—ASSIGNMENT—CLEAN HANDS.
   In 1866 B. & H. commenced the use of the word "Royal" as a mark for baking powder. H. & H. became assignees of the business, and continued it, using such mark; and under the trade-name Royal Baking Powder Company, down to 1873, when complainant corporation was organized. They then made a writing purporting to transfer the word "Royal" and the label used up to that time, but without mention of the business. The members of the firm became officers of complainant, and complainant in fact took and continued the business. Complainant has spent $5,000,000 in advertising its product in connection with the mark "Royal," and for several years prior to the suit its yearly sales averaged near 20,000,000 packages. Defendant claimed that in his business, which ceased in 1871, the use of the word "Royal" dated from 1865. It did not appear that a trade reputation with respect to defendant's product was extant in 1873, or that the use of the word "Royal" by B. & H., and later by H. & H., had in fact injured defendant, or contributed in any degree to the extinction of his baking-powder business. *Held*: (a) That the continuous and exclusive use of the word "Royal" for a series of years prior to the suit was sufficient to fix the trade-mark right in complainant; (b) that the writing by H. & H. was at least an abandonment of the word "Royal" by that firm; (c) that the want of a statement on complainant's label that it was successor to H. & H. was not a deception; and (d) that complainant was not precluded from defending its good will in 1894 by the supposed tres-

pass of B. & H. and H. & H. against defendant or his assignors prior to 1871.

4. SAME—MISREPRESENTATION.

The label used by defendant prior to 1871 contained statements that the baking powder sold by him was made by A. & Co., in England, whereas, in fact, it was made by defendant in New York. *Held*, that the word "Royal," on such label, could not, in connection with such misrepresentation, perform the function of a trade-mark.

5. SAME—DESCRIPTIVE NAME.

The word "Royal," as applied to baking powder, is not descriptive.

This was a suit by the Royal Baking Powder Company against George E. Raymond to restrain the infringement of complainant's trade-mark. The cause was heard on the pleadings and proofs.

Campbell & Custer and Rowland Cox, for complainant.

Smith, Helmer & Moulton and Henry W. Blodgett, for defendant.

SHOWALTER, Circuit Judge. Complainant is a corporation organized under the laws of New York in April, 1873. Since said date said corporation has been continuously engaged in business as a manufacturer and vender of baking powder. Its home office and chief place of business is in New York, but its trade connections extend throughout the United States. The word "Royal" is marked by complainant on the cans or packages containing the baking powder made by complainant. Said product is called "Royal Baking Powder," and the name of complainant corporation is Royal Baking Powder Company. These uses of the word "Royal" by complainant have been continuous, uninterrupted, and substantially exclusive since the date of incorporation above mentioned.

In 1866 a firm called Biddle & Hoagland commenced the compounding and selling of baking powder in connection with a business carried on at Ft. Wayne, Ind. This business, or the baking powder feature thereof, was afterwards transferred to New York, and was there carried on by C. N. and J. C. Hoagland, successors to the old firm, and under the name Royal Baking Powder Company, from 1868 down to 1873. The two Hoaglands became officers in complainant corporation at the time of its organization, and said corporation commenced the manufacture of baking powder, supplanting said firm, and thenceforward conducting said baking powder business on its own account, as already stated. Complainant insists that the word "Royal" was appropriated and used as a trade-mark for baking powder in July, 1866, by said Biddle & Hoagland, and that said mark was continuously so used in said baking powder business down to April, 1873, when complainant corporation was organized as above mentioned. On behalf of defendant it is insisted that in 1865, or certainly as early as March, 1866, one C. A. King, in connection with a business carried on at 24 and 26 Peck Slip, in New York City, sold a baking powder marked "Royal London Baking Powder." In the fall of 1866 one Decker became a partner with King. In the fall of 1867 Decker became sole owner by purchase from King. In August, 1868, the defendant bought the business from Decker, and continued to carry on the same at the old stand till the spring of 1870,

when he removed to another place in New York City. After such removal, defendant continued the business till 1871, when he failed. The articles mainly dealt in in this business were originally teas, coffees, and spices. Defendant, in his time, appears to have added liquors as an important part of his stock in trade. The compounding and sale of baking powder was at no time a very pronounced feature of this business. The trade in baking powder was confined to the neighborhood of New York City, and at and for some months before the time of said failure had almost ceased, though cans or parcels of said product were still on hand. The business, including the compounding and selling of baking powder, ceased entirely with said failure. From 1871 to 1894 defendant was engaged in various occupations and business enterprises, but does not appear to have concerned himself with the manufacture and sale of baking powder. Over the front of the store 24 and 26 Peck Slip, occupied by King and his assignees, as above stated, were painted the words "American Mills," and these words were apparently used as a trade-name for the business there conducted. This use of the words "American Mills" as a trade-name for said business continued from a time prior to the introduction of the Royal London Baking Powder till the failure of defendant, and extinction of said business, in 1871. Said words were not exhibited as a name on the front of defendant's place of business after the removal from Peck Slip, but were retained apparently on his bill and letter heads. In the latter part of February, 1894, defendant recommenced the manufacture and sale of baking powder; this time at 196 Michigan street, Chicago. He puts up his product in cylindrical tin cans similar in size and shape to those used by complainant and other baking powder makers. On these cans is pasted a colored, rectangular label, substantially the same in shape, size, and position on the cans, as the label used by complainant, and displaying in the left half thereof the four words, "Royal London Baking Powder," arranged in perpendicular column. The word "London" is printed in very much smaller type than the word "Royal," and there is a small and rather inconspicuous vignette, showing a lion and unicorn, below the words "Royal London," and above the words "Baking Powder," and separating the two words, "Trade Mark," printed in comparatively small type. On the right half of defendant's label, in small type, are the directions for using, followed by the words: "American Mills. George E. Raymond, Proprietor, 196 Michigan St., Chicago, Formerly 24 and 26 Peck Slip, New York." The directions, printed in English and German, are an exact copy of the directions on the left half of complainant's label. On the top of complainant's can are stamped or embossed the words: "Full Weight. ½ lb. [the fraction being changed to suit the size of the can]. Royal Baking Powder. Absolutely Pure." On the top of the can of corresponding size used by defendant are stamped or embossed the words: "Full Weight. ½ lb. Royal London Baking Powder. Strictly Pure." As will be seen from the facsimiles in the printed argument for complainant, and from the cans put in evidence as exhibits, these markings on the tops of the cans are very similar. That on complainant's can originated with, and has long been in use

by, complainant. Complainant likewise originated, and has long so used, said directions in English and German. Across the upper portion of the left half of complainant's label appears in large letters the word "Royal." Next below is a small oval, containing a cut in miniature of complainant's can, and below this are the words "Baking Powder." The upper left half shows in small characters the two words "Trade" and "Mark"; and the lower, the two words "Royal" and "Registered." The distinguishing, characteristic and notable mark on defendant's label, as on complainant's label, is the word "Royal."

The following letter, written by defendant under his new letter head, is in evidence:

Established 1865.　　　　　　　　　　　　　　　　G. E. Raymond, Prop.
American Mills.
Manufacturers of
Royal London Baking Powder.
196 Michigan Street.

Chicago, April 27th, 1894.

Mess. Mason, Ehrman & Co., Portland, Ore.—Gentlemen: Enc'd please find circular letter in re the Royal London Baking Powder. This old trade-mark has been revived. It is the first Royal ever placed on the Eastern market, and made all the name and fame possessed by a Co. now called Royal in consequence of its purity. A party writing from Indiana this morning says, "Royal London takes the place of Royal every time without a riflle." Your house was recommended to me by Mr. Foster, of Mess. Foster, Brydge & Co., of Union, Ore. We ship'd them some time ago one barrel powder, Mrs. Foster having made biscuits from the powder before an order was made. You can make more money out of Royal London than the other Royal. We would be pleased to make you a ship't, and give your house agency for Pacific coast. Will deliver goods in your city. Would be pleased to receive trial order from you. Awaiting your favor, we are,

Respy., yours,　　　　　　　　　　　　　　　　　American Mills Co.
Geo. E. Raymond.

Defendant testified that the baking powder made by him prior to 1871 was commonly known and spoken of as "The Royal" (not "Royal London"), and from the letter above it may be inferred that "Royal," and not "Royal London," is his colloquial designation of the product now made by him. I may add here that, as shown by the evidence, complainant, since its incorporation, has expended some $5,000,000 in advertising its product as "Royal Baking Powder," and its average of sales for many years has been nearly 20,000,000 packages per annum.

In March, 1894, complainant filed this bill to enjoin the use of the word "Royal" by defendant as a designation of baking powder made by defendant, or as a mark on defendant's goods, insisting that the said word is identified with the good will of complainant as a trademark on the baking powder made by complainant, as a part of the name of the baking powder made by complainant, and as a part of the corporate name of complainant; and that the use of said word by defendant in connection with the baking powder made by him and on his labels is essentially fraudulent and unfair, and a trespass on the complainant's good will. Defendant insists that he himself, and not complainant, is owner of the word "Royal" as a mark for

baking powder; and that his ownership may be referred to the use of said word by himself and his assignors from 1865 to 1871, such use being, in its inception, prior in time to any like appropriation of the word by complainant or its predecessors. In brief, defendant meets the case of complainant by insisting on the "better right" to the word,—better by reason of priority in time.

A trade-mark is a mere notice, an arbitrary mark or sign put on an artificial product, whereby any person interested in the information may be assured as to the origin of said product. Such mark is a means for rendering more pronounced, distinctive, and valuable that species of property known as the "good will" of a business. A manufacturer, for instance, may use as a trade-mark a word arbitrarily selected. In so doing he acquires no property in the word as such. His right attaches to the peculiar and added function of the word in identification of his product by reason of his use. In so adopting the word he takes nothing from, and in ceasing to so use it he returns nothing to, any store of common or public property. His right to the mark will ordinarily pass, as incidental to the good will of his business, to a successor who takes the business; and, from the necessity of the case, such right becomes extinct when the business, including the good will thereof, becomes extinct.

In Partridge v. Menck, 2 Barb. Ch. 103, Chancellor Walworth said:

"The court, in trade-mark cases, proceeds on the ground that the plaintiff has a valuable interest in the good will of his trade or business, and that, having appropriated to himself a particular label, sign, or trade-mark indicating that the article is manufactured or sold by him under his authority, he is entitled to protection against any one who attempts to pirate upon the good will of his friends, customers, or patrons of trade by sailing under his flag without his authority."

In Allan's Law of Good Will (page 26), it is said that "a trade-mark cannot exist apart from a business." It may be more accurate to say that a trade-mark cannot exist apart from the good will of a business, since what is known as the good will may persist for a time after such business has in fact ceased. A manufacturing establishment, for instance, may, with all its machinery and appliances and its store of products, be destroyed by fire, and a year or two may pass before such manufactory is rebuilt, and the business started again; but, when started, the old customers, in part at least, will resume trade connections. Here the business stops for a time, but the good will involving the trade-marks remains a property more or less valuable during the interval of cessation. I can conceive such a stoppage of business by accident or design, even for a series of years, where the good will, including the trade-marks, may still be found extant; that is to say, valuable, upon resumption. But when it is not shown in some satisfactory way that the trade reputation of a suspended business continues to have value,—can be exchanged or sold, for instance, for a price,—a court cannot say that a good will remains; in other words, that there still attaches to the old proprietor any dominion over, or property right in, a mark which may once have had, but which no longer has, significance for him in the world of trade.

In the case of this defendant, even upon his own showing, it cannot be said that the good will of the old business, which ceased in 1871, attaches to the new business, started in 1894. There is no continuity between the old and the new. The good will of the old business, whatever such good will may have amounted to, became extinct years ago. The word "Royal," or the words "Royal London," had no function, when defendant recommenced the baking powder business, as identifying a baking powder made by him. Any other sign or word would have answered his purpose to the same extent. The bare intent to use or adopt a word as a trade-mark signifies nothing, and confers no right, in the absence of the actual use of such mark as a trade-mark. The intent by defendant from 1871 to 1894, if he had such intent, of resuming the use of the word "Royal" as a mark for baking powder, amounts to nothing in the way of keeping alive the function which we may assume once attached to that word as identifying a baking powder made by him. On the theory that he once had a right in the word "Royal" as a trade-mark, his attitude with respect to that word in February, 1894, was the same as that of a stranger who then for the first time took up the baking powder business. By reason of the essential nature of a trade-mark I should say that this defendant has not the "better right," as insisted in his answer.

But the complainant's relief here is opposed on divers grounds. It is said that there was no assignment of the business by the Hoaglands to complainant, since they undertook to transfer, so far as the showing goes, only the trade-mark. The deed of assignment on this view would, so far as it concerns the word "Royal," amount at least to a declaration of abandonment by them. Complainant's right may be referred to a continuous and exclusive use by complainant of the mark in question from 1873 to the present time. Certainly no wrong was done to the Hoaglands or to their assignors, Biddle & Hoagland. There is no showing that any of these parties continued the baking powder business or the use of the mark after complainant commenced. It is clear that the complainant at its incorporation in fact took the business, and continued and developed it to its present dimensions; and it does not appear that in so doing complainant wronged the Hoaglands or their assignors. There is no want of clean hands on the part of complainant by reason of any wrong done by it as against its predecessors in business.

Again, it is said that complainant failed to show on its label the alleged assignment from its assignor. This omission, under the circumstances here shown, involved no fraud or false representation. Complainant made the baking powder in its cans, and its label contained no representation to the contrary. When one person buys from another, for instance, a patent medicine business, abandons the old place of manufacture, and proceeds himself to make the medicine at another place, but represents on his labels that it is made at the old place, and by the original compounder, he fails in a court of chancery against an alleged infringer. Nothing at all parallel to this is found here. There was, so far as I can make out, no false representation or imposition on the public in the labels of the complain-

ant. When complainant was chartered in 1873 the field was apparently open for the fair and honest use by complainant of the word "Royal" as a mark for baking powder. There is nothing to indicate that by the adoption of this word complainant expected or obtained the slightest advantage from any reputation which this defendant or his predecessors had acquired in the manufacture of baking powder. Moreover, the exclusive and continuous use of the word for a series of years prior and up to 1894 is, as already intimated, sufficient, prima facie, to fix the trade-mark right in complainant.

It is said, however, that from 1868 to 1871 the two Hoaglands, by their use of the word "Royal," trespassed upon the right of this defendant. I do not understand that defendant in fact sustained any injury. There was really no distinct or active competition between the Hoaglands and this defendant. Assuming that he might have obtained an injunction against them by reason of possible or apprehended injury, they in fact contributed in no way to his failure in 1871. To say that this complainant may not defend its good will when attacked in 1894—23 years after said supposed trespass by the Hoaglands—on the ground that the business of the Hoaglands passed into the control of complainant in 1873, would be an exceptional application of the doctrine of clean hands.

But the record shows another matter pertinent upon the point last mentioned, as also upon the claim to the "better right" advanced in the answer. The label used by defendant and his predecessors at Peck Slip showed after the words, "Royal London Baking Powder," the following: "Prepared only by Austin, Marshall, Hall & Co., Purveyors by Appointment to Her Majesty, 181 Tottenham Court Road, London, and New Cross, Surrey. None Genuine unless Signed, Austin, Marshall, Hall & Co." The name of the London firm following the word "Signed" was in script. Along the left outer edge of this label appeared the following: "Geo. Barwood & Co., Printers, 407 Oxford Street." This label was in fact prepared and printed by one Crump in New York, and the baking powder in the can was compounded by defendant in New York. No actual or substantial wrong may have resulted to any one from this misrepresentation. But the word "Royal" on the said label could not, in connection with said misrepresentation, perform the function of a trade-mark. Instead of identifying the origin of the goods, said mark was part of the instrumentality whereby such origin was concealed. For these reasons the use of the word by the Hoaglands could not have been a trespass on defendant, and hence fails not only his claim to the "better right," but also the fundamental assumption on which the want of clean hands by complainant is predicated.

It is said that the word "Royal" is a descriptive word. A court takes notice, as a matter of law, of the meaning of words. But the question whether or not a trade-mark function has been added to a word is one of fact. The word "Royal" is not descriptive of baking powder. Nor, as conveying the idea of comparative excellence, does this word touch the commodity, baking powder, otherwise than through a metaphor which is in a high degree fanciful and remote. Said word is, in fact, used as a mark to indicate the origin of the

goods made by this complainant. It is, in fact, a sign of origin. The function of this word as a mark for baking powder has no existence apart from the article made by complainant, and said function has thus become identified with the good will of this complainant. The use of this word in good faith by any person for any purpose of oral or written communication, descriptively or metaphorically, is not invaded by the trade-mark function which this complainant's peculiar use of said word has added to it. The facts of the case show that this defendant does not use the word descriptively or metaphorically. He wishes to mark his packages of baking powder with the sign "Royal," and he desires to have his product called "Royal Baking Powder." Entirely apart from the question whether the word "Royal" be descriptive or not, the proof here seems to show that the purpose of defendant is to appropriate the trade of complainant. The fact that defendant does have this intent might be unavailing against him if he could make out the "better right" to the word, as insisted in his answer. But I think the analogy of a patent right or of an estate in land, sometimes followed in reasonings about trade-marks, is false and misleading. I think, as stated above, that this defendant has not the "better right," and that complainant is not precluded from asserting and protecting its good will in a court of equity.

An injunction may issue according to the prayer of the bill.