# LEVERING COFFEE COMPANY *v.* MERCHANTS COFFEE COMPANY.

---

## TRADEMARK; ABANDONMENT.

A concern which for five years wholly discontinued the use of a trademark employed to designate a brand of coffee, the sales of which had been

for several years inconsequential, will be held to have discontinued the use of the trademark, with intent to abandon it, where it seeks to resume its use after a rival concern has established a good business under it. (Citing *Mathy* v. *Republic Metalware Co.* 35 App. D. C. 151.)

No. 776.    Patent Appeals.    Submitted May 17, 1912.    Decided May 30, 1912.

HEARING on an appeal from a decision of the Commissioner of Patents rejecting an application for the registration of a trademark.                                *Affirmed.*

The facts are stated in the opinion.

*Mr. James L. Stewart* and *Mr. John Emory Cross* for the appellants.

*Mr. Robert Watson* and *Mr. John Watson, Jr.,* for the appellees.

Mr. Justice ROBB delivered the opinion of the Court:

This appeal is from a decision of the Commissioner of Patents in an interference proceeding, refusing registration to the appellant of the word "Hygeia" as a trademark for coffee (registration already having been granted to appellee), the ground of the decision being abandonment of the mark by the appellant prior to its adoption by the appellee.

The record contains much irrelevant matter, as the issue is simple and sharply drawn. The appellee, Merchants Coffee Company, of Baltimore, Maryland, first adopted the word "Hygeia" as a trademark for coffee in about 1898, and soon built up a prosperous business under that mark. In 1881, E. Levering & Company, predecessors of the Levering Coffee Company, a copartnership, also of Baltimore, Maryland, was the user of several marks. It shipped to dealers coffee containing the brand "Hygeia." The name of the concern, however, was pur-

posely omitted from the packages that were to be sold to the retail trade, but it did appear upon the boxes in which these packages were packed. The reason for thus suppressing the name of the firm was that the firm did not wish the retail trade to know the real origin of this brand of coffee. The firm put out a standard brand, "E. L. C.," in connection with which its name did appear. The sale of the "Hygeia" brand, under the conditions mentioned, was continued until 1897. For two or three years prior to that time, however, the books of the company show that the sales of this brand were infrequent and inconsequential. From 1897 until 1902, a period of five years, no sales of the "Hygeia" brand were made; in other words, during that period there was a complete nonuser of the mark. In the factory books of the company covering that period, the columns headed "Hygeia" were devoted to the sale of other brands. Beginning in 1898, a new brand, "Hioja," was put out, and the use of this brand thereafter continued. On November 30, 1900, Eugene Levering, Jr., succeeded to the coffee roasting business of the old firm, and subsequently Mr. William J. Ewing was taken in as a partner, the business being conducted under the firm name of the Levering Coffee Company. Mr. Levering, in his testimony, was indefinite as to when he became a member of the old firm, stating that it was between 1895 and 1897. Before the books of the old firm were produced, he testified to a continuous use by that firm of the mark "Hygeia" down to the time when he succeeded to the business, and further testified that there was never any intent, so far as he was concerned, to abandon the mark. The books of the old firm disproved his testimony. Had he desired his testimony in reference to the question of abandonment to be given any weight, he should have shown definitely whether he was a member of the firm prior to the time when it discontinued the use of the mark. This he has not done. The members of the old firm were relatives of his, several of them were alive, and, for aught that appears, subject to be called as witnesses by his firm, the appellant. They were not called. One member of that firm was called by the appellee to testify concerning the

character of the use of the mark down to the time when it was discontinued, but he did not testify concerning the question of abandonment. Mr. Ewing was recalled by the appellant after his main testimony, and undertook to explain the failure of the old company to continue the use of the mark on the theory that a coffee war was then under way. We agree with the Commissioner that his testimony was an afterthought, improbable, and entitled to no weight. It is strange, indeed, that the alleged war should have affected this brand of coffee alone, and it is still more strange that the men who would have known all about it, the members of the old firm, were not called by the appellant.

It is true that the right in a trademark is a property right, and that intent to abandon must clearly appear from the facts and circumstances surrounding nonuser. "As in other cases, intent may be inferred when the facts are shown, yet the facts must be adequate to support the finding." *Baglin* v. *Cusenier Co.* 221 U. S. 580, 598, 55 L. ed. 863, 871, 31 Sup. Ct. Rep. 669. And acts which, unexplained, would warrant the inference of abandonment, may be met by a showing of a lack of intention to abandon. *Saxlehner* v. *Eisner & M. Co.* 179 U. S. 19, 45 L. ed. 60, 21 Sup. Ct. Rep. 7. See also *Mathy* v. *Republic Metalware Co.* 35 App. D. C. 151.

Having in mind the character of the use of the mark by the appellant's predecessors, which, for the purposes of this opinion, may be conceded to have been a trademark use, the gradual falling off of sales under that brand, the final complete cessation of those sales under the circumstances mentioned, the adoption soon after of the similar mark "Hioja," the period of time which elapsed before the old mark was again used, the fact that the new use was not begun until several years after a rival concern, in the same city, had established a good business under that mark, the failure to call available members of the old firm to explain away the inference naturally resulting from the acts and circumstances detailed, all lead to the conclusion that when, in 1897, appellant's predecessors discontinued the use of this mark, they did so with the intent to abandon it. While there is no testimony showing knowledge on the part of the

appellant of the early use by appellee of this mark, it is inconceivable that two rival concerns, located in the same city and engaged in the same line of business, should remain ignorant concerning a matter vital to both. It is not unlikely, in our view, that the revival of the use of this mark by appellant was the result of its successful use by appellee, rather than the result of the intent of the predecessors of appellant not to abandon it.

The decision of the Commissioner is affirmed. *Affirmed.*