## IMPERIAL COTTO SALES CO. v. N. K. FAIRBANKS CO.

(Court of Appeals of District of Columbia.    Submitted January 18, 1921.
Decided February 7, 1921.)

No. 1328.

1. **Trade-marks and trade-names ⊜⇒21—Damage presumed from use of mark having definite meaning; "Cottolene."**

   Where the registered trade-mark "Cottolene" had been used so long and so extensively as a trade-mark for cooking fat that it was defined in modern editions of the dictionaries as such, the right to oppose registration of the word by another does not turn merely on the question whether goods of the opposing parties are of the same descriptive properties or the use of the mark would be likely to lead to confusion, but the courts will presume damage therefrom.

2. **Trade-marks and trade-names ⊜⇒44—Remedy of opponent of registration based on right to protection of good will and reputation.**

   The relief given by Trade-Mark Act, §§ 6, 13 (Comp. St. §§ 9491, 9498), by opposition or cancellation proceedings, rests fundamentally on the right of a person to be protected in the reputation and good will of his business.

3. **Trade-marks and trade-names ⊜⇒1—Function is to identify origin and ownership of goods.**

   The function of the trade-mark is to identify the origin and ownership of the goods to which it is attached.

4. **Trade-marks and trade-names ⊜⇒32—Property right ceases with discontinuance of use.**

   While there is a property right in a trade-mark, the right is grounded not in the mark itself, but in the right to be protected in the reputation and good will of the business designated thereby, and such right ceases with the discontinuance of the use of the trade-mark.

5. **Trade-marks and trade-names ⊜⇒43—Use of mark for stock food can be opposed by owner of mark for cooking fat.**

   The owner of the trade-mark "Cottolene," which had been used long and extensively to designate the owner's product of a cooking fat derived from cotton seed oil, can oppose registration of the same word as a trade-mark for a stock food prepared from cotton seed, since, even if there would be no confusion of the goods of the respective parties, the application of that word to a product made from inferior cotton seed would damage the reputation of the original user.

Appeal from the Commissioner of Patents.

Application by the Imperial Cotto Sales Company for registration of a trade-mark, opposed by the N. K. Fairbanks Company. From a decision of the Commissioner of Patents, sustaining the opposition and refusing registration, the applicant appeals. Affirmed.

E. T. Fenwick and Charles R. Allen, both of Washington, D. C., for appellant.

Archibald Cox, of New York City, and William G. Henderson, of Washington, D. C., for appellee.

VAN ORSDEL, Associate Justice.    This is a trade-mark opposition proceeding.   The appeal is from the decision of the Commissioner of Patents sustaining a notice of opposition to the registration by appellant, Imperial Cotto Sales Company, of the word "Cottolene" as a

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

trade-mark for an animal feed meal composed principally of cotton seed.

[1] It appears that the predecessor in business of the opposer, the N. K. Fairbanks Company, coined the word "Cottolene" in 1887 as a trade-mark to designate a cooking fat made from cotton seed oil and oleostearine. The mark has been registered in most of the countries of the civilized world, and the goods of the opposer company bearing the mark have a wide international reputation. The word "Cottolene," coined and used exclusively by the opposer and its predecessor in business for over 30 years, has come to have a fixed meaning in the language. It appears in the modern editions of the dictionaries. In the latest edition of the Standard Dictionary, it is defined as "a derivative of cotton seed used as a substitute for lard." It will therefore be observed that the word has come into the language solely by reason of its application by opposer to a certain class of goods, and the character of the goods defines its meaning.

This is not, therefore, the ordinary case which may be turned merely upon the question whether the goods of the opposing parties are of the same descriptive properties and the use of the mark would be likely to lead to confusion in trade. Where this element is clearly present, the courts will usually go no further, but presume damage therefrom. The protection extended by the court in such a case is both to the public and to the owner of the mark whose rights are being invaded.

"The deceit of the public, and the consequent injury to it, are as much to be regarded by a court of equity as an injury to a plaintiff's business." Celluloid Mfg. Co. v. Read (C. C.) 47 Fed. 712, 715.

[2] In the present case, however, the issue of damage to the opposer is twofold—damage from confusion of goods and more particularly damage from confusion of reputations. The Trade-Mark Act broadly gives relief by opposition or cancellation proceedings to any one believing himself to be damaged by the registration of a mark. 33 Stat. 724, §§ 6 and 13 (Comp. St. §§ 9491, 9498).

The redress thus accorded rests fundamentally upon the right of a person to be protected in the reputation and good will of his business.

"It seems to be the law that, when manufacturers have educated the public to ask for a certain article by its trade-mark name, they have acquired the right to insist that products manufactured by others shall not be given to the public under that name. It is just that it should be so, for the benefit derived from such name can only be obtained by faithful service in furnishing articles of recognized value. Moreover, if the trade-mark name might be adopted by others, inferior articles might then be produced and sold under it; and thereby the value to manufacturers of the reputation of the name used by them as a trade-mark would be destroyed." N. K. Fairbanks Co. v. Central Lard Co. (C. C.) 64 Fed. 133, 136.

[3, 4] The function of the trade-mark is to identify the origin and ownership of the goods to which it is attached. While there is a property right in a trade-mark (Trade-Mark Cases, 100 U. S. 82, 92, 93, 25 L. Ed. 550), the right is grounded not in the mark itself, but in the right to be protected in the reputation and good will of the business designated and known by the use of the trade-mark. This property right in the trade-mark ceases with the discontinuance of its use.

The courts, therefore, afford protection in trade-marks only in so far as they maintain and extend the reputation and good will of the owner in the business for which they are adopted and used. Hanover Milling Co. v. Metcalf, 240 U. S. 403, 36 Sup. Ct. 357, 60 L. Ed. 713.

[5] It may well be that no purchaser would mistake a stock food for a lard substitute, merely because they bear the same trade-mark. But this is not the exclusive test. While the likelihood of confusion in trade arising from the use of the same or similar marks is sufficient to establish damage, it is not the only ground upon which injury may be predicated. Manifestly it would be too narrow a ground upon which to rest the present case. The goods are derived from the same product. The stock food is produced by the extraction of the oil from the cotton seed. A poor or adulterated grade of cotton seed meal, bearing the mark "Cottolene," would, we think, reflect upon the reputation of opposer's product, which is known the world over by that name. It is clear that, if these goods, derived from the same product, bear the same name, the public would be justified in concluding that they originated from the same trader. In other words, "Cottolene," having been coined and used for more than a generation exclusively as the name of a cotton seed product, when adopted as the name of an inferior cotton seed product, would lead to a comparison damaging to the reputation derived from its original use.

"The essence of the law of trade-marks is that one man has no right to palm off, as the goods or manufacture of another, those that are not his. This is done by using that other's trade-mark, or adopting any other means or device to create the impression that goods exhibited for sale are the product of that other person's manufacture when they are not so." Celluloid Mfg. Co. v. Cellonite Mfg. Co. (C. C.) 32 Fed. 94.

For the foregoing reasons, we think the opposition should be sustained and registration refused. The decision of the Commissioner of Patents is affirmed.

Affirmed.

Mr. Justice HITZ, of the Supreme Court of the District of Columbia, sat in the place of Mr. Justice ROBB in the hearing and determination of this appeal.