26 C.C.P.A. (Patents)

**COTY, Inc., v. JOSEPH DIXON CRUCIBLE CO.**

**Patent Appeals No. 4061.**

Court of Customs and Patent Appeals.

Feb. 27, 1939.

Asher Blum, of New York City (Hugo Mock, of New York City, and Charles R. Allen, of Washington, D. C., of counsel), for appellant.

Spencer A. Studwell, of New York City (Harry A. English, of New York City, of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

Appellee, Joseph Dixon Crucible Company, on October 24, 1935, filed its application with the United States Patent Office for the registration of its trade-mark "AIR SPUN" used in interstate commerce for graphite.

The appellant, Coty, Inc., hereinafter referred to as opposer, filed a notice of opposition to the registration of appellee's said trade-mark, basing its opposition substantially on the following facts: That it is the owner of a trade-mark, No. 327,950, registered September 10, 1935, which trade-mark consists of the words "Air-Spun" and is substantially identical in every respect with the mark which appellee (hereinafter referred to as applicant) sought to register, the mark of said registration being applied to talcum powder, dusting powder, and face powder and sachet.

Opposer alleges that the registration of applicant's mark would be damaging to the reputation of opposer for the reason that graphite is associated with lead pencils, one of the products manufactured by appli-

cant; that the term "lead pencils" conveys, although erroneously, the suggestion of lead, and that if lead, at one time an injurious ingredient of certain face powders, was associated in the minds of purchasers with opposer's well-advertised and high-class face powders, its reputation would be damaged.

Both parties took testimony. The record shows that the use opposer made of its mark was chiefly for face powder. Its priority of use of the mark is not questioned. To some extent the mark was used by opposer for dusting and talcum powder and sachet, it being shown, however, that owing to the character of those goods, the same trade practices related to all of them. Opposer's goods are sold chiefly through department, drug and syndicate stores. Women, for the most part, are the ultimate consumers of opposer's products.

The applicant, according to the record, is a manufacturer of graphite and related products, such as crucibles, paints and varnishes, pencils, graphite greases, and many other graphite compounds. Its graphite is sold in bags weighing ten or twelve pounds, principally as a lubricant, used alone or in combination with oils or greases. It is also used by electrical companies, ink manufacturing companies and others. It is sold to consumers who ordinarily use the same for manufacturing or processing purposes. The record does not show that the goods of both parties ever go to the same purchasers. Opposer's goods are widely advertised in magazines, newspapers, by radio, in window displays, etc. Applicant's advertising of a great many of its products is chiefly in mechanical or trade papers relating to "hardware, mill supply and such media probably as the 'Popular Mechanics.'"

The Examiner of Interferences concluded that the goods of the respective parties were not of the same descriptive properties; that owing to the differences in the goods and the conditions with reference to their use, advertisement and sale, there would be no likelihood of confusion, and therefore dismissed the notice of opposition and adjudged that applicant was entitled to register the said mark.

Upon appeal, the Commissioner of Patents affirmed the decision of the examiner and stated:

"In the instant proceeding there is not the remotest relationship between the goods involved, and I agree with the examiner of interferences that this fact precludes the relief sought by opposer. Opposer's mark is doubtless unique and valuable, and opposer's annoyance at its appropriation by applicant is readily understood. But opposer owns the mark only by reason of its use thereof on particular merchandise, and can prevent its registration to others only for merchandise of the same class or description."

From the decision of the commissioner the opposer has appealed here. Opposer's argument, so earnestly made before this court in support of its contentions that the opposition should have been sustained, is such an unusual presentation that it is thought proper to call attention to it in some detail in order that the position of the tribunals below and of this court in ruling thereon may be more fully understood. Opposer does not in its brief or in oral argument here suggest that there would be any likelihood of anyone concluding, under the circumstances shown by the record, that there was a common origin of the two articles sold under the respective trade-marks. Opposer predicates the damage, which it alleges it will sustain by said registration, not upon the fact that purchasers may conclude that opposer has gone into the graphite business, or that the applicant has gone into the face powder business, but argues that graphite is associated with lead pencils, although lead pencils contain no lead; that lead, at one time used in face powder and face lotions, was regarded as a harmful ingredient; that because of these facts it might be concluded by opposer's customers that its well- and favorably-known products sold under the name of "Air-Spun" contained lead (although they contain neither lead nor graphite), and that opposer's reputation would thereby be damaged.

Opposer frankly admits that the case presents a "very peculiar aspect" and that "an extremely novel and unique situation is present." It argues, in effect, that since both trade-marks are arbitrary and unusual, the likelihood of damage is greater than if the trade-marks were not of this character. In some instances this situation is entitled to consideration. Bon Ami Company v. McKesson & Robbins, Inc., 93 F.2d 915, 25 C.C.P.A., Patents, 826.

We are of the opinion that the goods of the respective parties are not of the same class or of the same descriptive properties. This being true, the mandatory pro-

visions of section 5 of the trade-mark act of 1905, 15 U.S.C.A. § 85, prescribing that trade-marks shall not be registered under certain circumstances, are not applicable. While the trade-marks are substantially identical, the goods of the respective parties are so different that it seems clear that there is not even a remote probability that purchasers would be deceived as to the origin of the respective goods from the concurrent use of the two marks as alleged.

■ Opposer argues that talc, used in face powder, and graphite are minerals and that both are finely powdered materials. It is not seriously argued that face powder and applicant's graphite and graphite products are of the same descriptive properties, but it is argued that graphite and lead are of the same descriptive properties. We think that opposer's contentions are tenuous. We have examined all the authorities cited, as well as many others and find no decision where such circuitous reasoning was employed in connection with the determination of the question of the registrability of a trade-mark or, for that matter, to questions relating to protection in the use of a mark. Trade-mark laws as a whole, and the registration law here involved in particular, were never designed to afford a remedy for every remote and far-fetched claim of damage.

Opposer particularly relies on the case of Imperial Cotto Sales Co. v. N. K. Fairbanks Co., 50 App.D.C. 250, 270 F. 686, 687. That case involved the question of the registration of the trade-mark "Cottolene" applied to cottonseed meal to be used for feeding livestock which was refused registration upon the opposition of the owner of the registered trade-mark "Cottolene" applied to a cooking fat made from cottonseed oil and "oleostearine." It is true that the Court of Appeals of the District of Columbia stated that in that particular case it was not so much a question of damage from confusion of goods but was a question of damage flowing from the "confusion of reputations." Regardless of what might be said with respect to the reasoning of the court in that case, we think that the situation present there was entirely different from that presented here since both of the products there involved had the same cottonseed origin which origin was indicated by the trade-marks there in issue. In that case there were far better grounds for arguing that the goods were of the same descriptive properties than in the instant case. We had that case under consideration in Procter & Gamble Co. v. Crescent Supply Co., 80 F.2d 1002, 1004, 23 C.C.P.A., Patents, 790, and in discussing the case said: " * * * Both of the products there involved had in part precisely the same cotton seed origin, and this origin was strongly indicated by the nature of the mark there in issue. Neither of these facts is present in the case at bar, and therefore the case last above cited is not, in our opinion, an authority upon the question here before us. It is therefore unnecessary for us to comment further upon said cited case."

None of the other cases cited by opposer are sufficiently in point on the facts at bar to warrant discussion here.

We conclude that the goods of the respective parties differ in all essential respects to the extent that there is no reasonable probability that confusion of purchasers, within the meaning of the statute under consideration, will flow from the concurrent use of said marks as shown. The goods are not produced from the same materials, do not look alike and are used for different purposes by different classes of people. The circumstances surrounding the sale and advertisement of face powder and the other articles on which opposer uses its mark are wholly different from those pertaining to applicant's goods.

The Patent Office tribunals properly dismissed the notice of opposition and, upon this record, properly adjudged that the applicant was entitled to the registration for which it has made application, and the decision of the commissioner affirming that of the Examiner of Interferences is affirmed.

Affirmed.