## AMERICAN PHOTOGRAPHIC PUB. CO. v. ZIFF-DAVIS PUB. CO.

### No. 8174.

Circuit Court of Appeals, Seventh Circuit.

May 7, 1943.

Geo. P. Dike, Cedric W. Porter, Dike, Calver & Porter, Lurie & Alper, and Israel Gorovitz, all of Boston, Mass., for appellant.

Bailey Stanton, S. J. Stanton, Wm. McK. Gleeson, Roy W. Hill, and Stanton & Stanton, all of Chicago, Ill., for appellee.

Before EVANS and KERNER, Circuit Judges, and LINDLEY, District Judge.

KERNER, Circuit Judge.

Plaintiff, American Photographic Publishing Company, appeals from a decree dismissing, for want of equity, its complaint alleging infringement of its common law trade-mark and unfair competition. Jurisdiction rested on diversity of citizenship and the requisite jurisdictional amount.

The facts are not in dispute. On October 27, 1914, plaintiff, a Massachusetts corporation, purchased from Frank R. Fraprie a magazine entitled "Popular Photography." Thereafter and until May, 1916, plaintiff's magazines, "Popular Photography incorporating The Photographic Times," designed to appeal primarily to the amateur photographer, and "American Photography," designed to appeal to the expert photographer, were published as separate periodicals.. At that time plaintiff consolidated both publications into "American Photography," which was aimed to please readers and advertisers of both its predecessors. For six months the magazine carried on its cover the title "American Photography incorporating Popular Photography and The Photographic Times." Thereafter, only the name "American Photography" appeared on the cover. From the date of consolidation, the masthead of plaintiff's magazine has carried the title "American Photography" in large letters, followed by the word "incorporating" and a list of the names of former publications, including Popular Photography in smaller type. This list rose from eight in 1916 to thirteen prior to defendant's first use of the title "Popular Photography."

On January 19, 1937, upon application theretofore made by the defendant, the title "Popular Photography including Amateur Cinematography" was registered by the defendant in the United States Patent Office as Trade Mark No. 342,417. After defendant's magazine entitled "Popular Photography" was published, plaintiff, on April 7, 1937, notified defendant that the name "Popular Photography" belonged to it, that it intended to defend its rights therein, and thereafter plaintiff filed its complaint in the instant case and began cancellation proceedings against the defendant in the United States Patent Office. An Examiner of Interferences found plaintiff had abandoned "Popular Photography" as a title and as a trade-mark, that Popular Photography as used by plaintiff was not a trade-mark and dismissed plaintiff's petition. The Commissioner of Patents affirmed the decision of the Examiner of Interferences, and upon appeal that decision was affirmed, 127 F.2d 308.

Since May, 1937, defendant's magazine "Popular Photography" has appeared monthly. Its size, style, dress, composition and content differ from plaintiff's publication, and the typographical make-up of the titles of the two magazines is different. The title Popular Photography, claimed by plaintiff, did not appear in the advertising manual "Standard Rate and Data Service" at the time defendant adopted it, nor has it appeared there since under plaintiff's name. No subscriptions were lost by plaintiff when defendant's magazine appeared, and plaintiff's newsstand sales

increased afterwards. From its very first issue defendant's periodical has had a very much greater circulation than plaintiff's ever had or than its "American Photography" has.

The principal issue presented here is whether plaintiff's carrying the title Popular Photography on the masthead of its publication, "American Photography," was such a trade-mark use as to prevent abandonment of its right to the exclusive use of that title.

■ Although local law applies to unfair competition and common law trade-mark infringement where federal jurisdiction is based on diversity of citizenship, Pecheur Lozenge Co. v. National Candy Co., 315 U.S. 666, 62 S.Ct. 853, 86 L.Ed. 1103, the applicable local law does not differ from the general common law of trademarks. Accordingly, decisions of federal courts and other jurisdictions are in point as illustrations of the common law.

The term "masthead" is a technical term of the printing trade, referring to the page in a publication which shows the title of the publication, the titles of publications which have been merged or consolidated under the name of the publication, the names of publishers and editors, the place where published, the subscription rates, the date of issue, and the frequency of publication. The relevant part of plaintiff's masthead read as follows:

present function is merely to describe the history and background of "American Photography."

■ Although plaintiff contends that its "Popular Photography," which was established in 1912, has not been discontinued and is still being published as a consolidated publication, it is apparent from the masthead in question that only one magazine is now published and that is "American Photography." True, the masthead reads American Photography *incorporating* Popular Photography along with the twelve other predecessors. But the word "incorporate" means "unite intimately" or "assimilate," Webster's New International Dictionary, 2d Ed., 1942, 1260; and synonyms are "fuse" or "merge." It is clear that the voracious "American Photography" has swallowed the former periodicals, and that ample time has elapsed for the digestive process to occur, so that absorption has resulted. This conclusion is strengthened by the following facts: the title which appears on the cover of plaintiff's publication is American Photography; this title has appeared in "Standard Rate & Data Service" since 1916; readers are asked to mention "American Photography" in corresponding with advertisers; and plaintiff registered American Photography as the title of its magazine in the United States Patent Office in 1938. Hence we believe that the label which has title sig-

## AMERICAN
## PHOTOGRAPHY
### INCORPORATING

| | |
|---|---|
| ANTHONY'S PHOTOGRAPHIC BULLETIN, ESTABLISHED 1870 | PHOTO ERA, ESTABLISHED 1898 |
| THE PHOTOGRAPHIC TIMES, ESTABLISHED 1871 | CAMERA AND DARK ROOM, ESTABLISHED 1898 |
| THE AMERICAN PHOTOGRAPHER, ESTABLISHED 1879 | PHOTOGRAPHIC TOPICS, ESTABLISHED 1902 |
| THE AMERICAN JOURNAL OF PHOTOGRAPHY, EST. 1879 | THE AMATEUR PHOTOGRAPHER'S |
| THE PHOTO BEACON, ESTABLISHED 1888 | WEEKLY, EST. 1912 |
| AMERICAN AMATEUR PHOTOGRAPHER, ESTABLISHED 1889 | POPULAR PHOTOGRAPHY, ESTABLISHED 1912 |
| CAMERA NOTES, ESTABLISHED 1897 | PHOTO CRAFT, ESTABLISHED 1897 |

Plaintiff contends that by keeping Popular Photography on its masthead it retained the exclusive right to use it. The names of the periodicals listed under American Photography do not even purport, however, to represent existing publications. Commercially they are dead, and they are, at most, names of the ancestors of the present magazine. Like epitaphs on the tombstones in the family burial plot, they reflect an honored past; but their

nificance for plaintiff's publication is American Photography.

■ Although trade-mark rights are property, they are not protected per se; it is only the good will in connection with which the mark is used that is protected. Hanover Star Mill. Co. v. Metcalf, 240 U.S. 403, 412–414, 36 S.Ct. 357, 60 L.Ed. 713. As its name indicates, the function of a trade-mark is to serve as a distinctive mark showing the origin or ownership of

the particular article to which it is affixed. Elgin Nat. Watch Co. v. Illinois Watch-Case Co., 179 U.S. 665, 673, 21 S.Ct. 270, 45 L.Ed. 365. Whether a mark identifies an article, then, should be considered in ascertaining whether it should be protected against alleged infringement. Here, plaintiff's use of Popular Photography was not a tag for its article; indeed, the masthead is a perfunctory matter which interests readers little, if at all. The patent office tribunals found that plaintiff's subscribers were not even aware that the notation Popular Photography appeared in the masthead of "American Photography." Because it is not a commercial signature and is very inconspicuous, a masthead use is not the same as use on the cover, on a banner head, news head, or feature head. Since the title in question, Popular Photography, was not used in such a way as to identify the publication "American Photography," its appearance in the masthead was not a trade-mark use, i. e., the mark did not signify the individuality of source, and the authorities cited by plaintiff are distinguishable for the reason that the name or title in dispute in them was identified with the article. Since exclusive right arises only from distinctive use, Lawyers Title Ins. Co. v. Lawyer's Title Ins. Corp., 71 App. D.C. 120, 109 F.2d 35, 44, and since the owner of a trade-mark may not make a negative and merely prohibitive use of it as a monopoly, United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 97, 98, 39 S.Ct. 48, 63 L.Ed. 141, plaintiff could not prevent defendant from adopting the title Popular Photography.

We do not wish to be understood as holding that the day after the owner of a trade-mark ceases to publish a periodical under one title and begins to publish it under another, carrying the former title on the masthead, some person could appropriate it with impunity, for he could not. Cf. Powell v. Valentine, 106 Kan. 645, 189 P. 163. We are passing only on the situation here presented, where there has been discontinuance of the former publication for more than twenty years, coupled with evidence to show abandonment. Although plaintiff contends there has been no abandonment, we think that the record clearly discloses that plaintiff abandoned the name Popular Photography as its trade-mark.

Express indications of abandonment are not wanting. The masthead of "American Photography" has listed the name Popular Photography along with the other discontinued publications. In the last issue of plaintiff's "Popular Photography" as a separate publication, in April, 1916, plaintiff printed the following: "We are therefore able to announce to our readers that the April issue of Popular Photography will be the last published, and that with the May issue of American Photography, Popular Photography will be merged in this magazine." Moreover, when plaintiff registered its trade-mark in 1938, it registered not American Photography Including Popular Photography, but simply American Photography. Furthermore, Fraprie, the editor of "American Photography" and former editor of plaintiff's "Popular Photography," stated in a letter that "Popular Photography" had not been published for several years. On being questioned, he stated that he hoped to start a new magazine by that name, which shows that there was no magazine entitled Popular Photography extant when defendant commenced publishing its magazine.

Plaintiff contends, however, that since Fraprie (who was director, treasurer, and editor, as well as a very large stockholder, and thus well qualified to speak for plaintiff) stated that he never intended to abandon the mark Popular Photography, it was not lost because intent is an essential of abandonment. But actions frequently speak louder than words. The facts and circumstances shown by this record outweigh this contention. Twenty years of non-user plus statements and actions showing intent to discontinue a publication are cogent indications that the one-time owner had given up its rights therein. In reaching this conclusion, we are not unaware of the decisions holding that intention is necessary to abandonment. But the purely subjective intention in the abandoner's mind to re-engage in a former enterprise at some indefinite future time is not sufficient to avoid abandonment where an objective analysis of the situation furnishes ample evidence to warrant the inference of abandonment. Golenpaul v. Rosett, 174 Misc. 114, 18 N.Y.S.2d 889; American Photographic Pub. Co. v. Ziff-Davis Pub. Co., Cust. & Pat. App., 127 F.2d 308. Rather, we think the recognitive sense of the public, i. e. the present associative identity of the mark in the public mind with its employer's goods, is the basis for trade-mark rights. Cf. Hanover Star Mill. Co. v. Metcalf, 240 U.S. 403,

412–413, 36 S.Ct. 357, 60 L.Ed. 713. Many of the opinions which discuss intent reveal a fact situation where there has been obvious survival of the associative significance of the mark. Hence, if the mark still means the first appropriator in the public mind, disuse will not be abandonment, Ansehl v. Williams, 8 Cir., 267 F. 9; Gold Seal Associates v. Gold Seal Associates, D.C., 56 F.2d 452, but if the good will built up by the use of a mark has perished so that it no longer has any associative significance in the public mind, it may be reappropriated. Golenpaul v. Rosett, supra; Blackwell v. Dibrell, 3 Fed.Cas. page 549, 554, No. 1,475; Royal Baking Powder Co. v. Raymond, C.C., 70 F. 376, affirmed, 7 Cir., 85 F. 231; Rockowitz Corset & Brassiere Corp. v. Madame X Co., 222 App. Div. 359, 226 N.Y.S. 293, affirmed, 248 N. Y. 272, 162 N.E. 76; Manz v. Philadelphia Brewing Co., D.C., 37 F.Supp. 79; see Interstate Distilleries v. Sherwood Distilling Co., 173 Md. 173, 195 A. 387, 390, 391; Imperial Cotto Sales Co. v. N. K. Fairbanks Co., 50 App.D.C. 250, 270 F. 686, 687.

We do not believe that when defendant commenced to use the title Popular Photography (May, 1937) the public had in mind that it meant plaintiff's magazine, which had ceased to exist twenty years before. To us it seems that the vitality of any stimulus given by the name had been so diluted by the passage of time as to have no potency. Neither is there any evidence indicating that the defendant expected to, or obtained the slightest advantage from the one-time reputation of plaintiff's former magazine.

 This conclusion is substantiated by the fact that the average length of a subscription to plaintiff's "Popular Photography" had been three years, and its advertising contracts were on the average for one year. Hence it is not likely that subscribers or advertisers would remember the former periodical so well that they would buy or advertise in the new magazine twenty years later simply because of the old "Popular Photography's" reputation. The dying-out of good will, then, marked the end of plaintiff's right to prevent use of the title Popular Photography by defendant. See Derenberg, Trade-Mark Protection and Unfair Trading (1936) 601 et seq. Moreover, abandonment may be inferred from lack of use, Royal Baking Powder Co. v. Raymond, su-

pra, and Levering Coffee Co. v. Merchants Coffee Co., 39 App.D.C. 151.

In answer to the contention that defendant could not use the title Popular Photography even if plaintiff's masthead use was not a trade-mark use, we say that the trial court's finding that defendant did not palm off its goods as plaintiff's is supported by ample evidence, and that the two publications are clearly so different that there is little likelihood of confusion. Where ordinarily prudent buyers are not misled, no relief is warranted and none will be granted. Pulitzer Pub. Co. v. Houston Printing Co., D.C., 4 F.2d 924, affirmed, 5 Cir., 11 F.2d 834; Durable Toy & Novelty Corp. v. J. Chein & Co., 2 Cir., 133 F.2d 853; Caffarelli Bros. v. Western Grocery Co., 102 Tex. 104, 127 S. W. 1018; Becker v. Loew's Inc., 7 Cir., 133 F.2d 889. We think that the meager instances of confusion to which plaintiff points are more properly attributable to carelessness on the part of the inquirers than to the conduct of the defendant. Cf. Cridlebaugh v. Rudolph, 3 Cir., 131 F.2d 795, 801; Pulitzer Pub. Co. v. Houston Printing Co., supra. Hence we have concluded that there was no unfair competition.

The judgment of the District Court is affirmed.