Warren H. ANDERSON, Plaintiff,

v.

NATIONAL BROADCASTING CO., Inc., Defendant.

United States District Court
S. D. New York.
Nov. 17, 1959.

Rogers, Hoge & Hills, New York City, Mercer L. Stockell, New York City, of counsel, Rommel, Allwine & Rommel, Washington, D. C., John M. Rommel, Washington, D. C., of counsel, McCarthy, Rose & Haynes, Amarillo, Tex., George S. McCarthy, Amarillo, Tex., of counsel, for plaintiff.

Coudert Brothers, New York City, Carleton G. Eldridge, Jr., Eugene L. Girden, New York City, of counsel, for defendant.

EDWARD WEINFELD, District Judge.

Plaintiff moves to enjoin the defendant from advertising and broadcasting any television program entitled "Law Of The Plainsman" or one under any other title containing a reference to "The Plainsman" and from broadcasting any television show featuring or presenting any character therein known or designated as "The Plainsman". Defendant's program has been broadcast over its national network stations since October 1, 1959 and is scheduled to be presented each Thursday evening. The viewing potential is 41,000,000 television sets or an estimated audience of 140,000,000 persons.

Jurisdiction is asserted upon diversity of citizenship and the Trade Mark Act of 1946.[1]

Plaintiff's use of the name "The Plainsman" originated in a sponsored television program broadcast by a local station, KFDA, at Amarillo, Texas. The range of the station extended to an area known as the High Plains, part of the Great Plains, which includes the Panhandle of Texas, parts of New Mexico, Oklahoma, Kansas and Colorado. The viewing potential of the television station is 170,000 television sets or an estimated 500,000 persons.

The sponsor was Plains Creamery, a distributor of milk products in the High Plains area. The name of the sponsor and the locale, suggested the adoption by plaintiff of the name "The Plainsman". In his own words:

"Our sponsor was 'Plains Creamery'—This being the High Plains, it tied in that I should be called 'The Plainsman' for 'Plains Creamery'."

Plaintiff was depicted as a cowboy who narrated cowboy adventures. The promotional appeal for the sponsor's milk products was directed principally to children in the High Plains area. The show was presented five days a week, Monday through Friday, from May 1954 to April 1958, when it was discontinued because the sponsor was merged with a national dairy company. The show was owned by the television station by which plaintiff was employed as production manager. With the consent of the station owner, the plaintiff, in April 1957, registered the title, "The Plainsman" in the United States Patent Office, as a service mark for a television show of the western adventure type.

In addition to his regular appearances on the weekly program, plaintiff, in his character as "The Plainsman", attended rodeo shows, appeared occasionally on other television programs, made public appearances throughout the High Plains area for various charities, chambers of commerce and similar organizations. He was referred to as "The Plainsman" in all media of advertising. He asserts that some 12,000 children who listened to his program joined, under his inspiration, a club known as "The Plains Riders", sponsored by Plains Creamery as part of

1. 60 Stat. 427 (1946), 15 U.S.C. §§ 1051–1127.

its advertising campaign. In sum, plaintiff alleges that he has created, and become identified as, a western type character under the name of "The Plainsman" in the states of Texas, New Mexico, Oklahoma, Colorado and Kansas; that he is known by that name to the public generally and not by his true name; that a valuable good will attaches to the name and to the character created. He claims a property right in the good will attaching to the name and the character so created by him and seeks to enjoin the defendant from using "The Plainsman" in connection with its television show, not only in the Plains area, but also throughout the United States. Here his position is that, based upon his registration, he is entitled to expand the use of the name throughout the country and so is entitled to protection against any use of the name which may confuse or hinder that expansion.

Although the sponsored program, on which plaintiff originally appeared at Amarillo, Texas, has been discontinued for a year and one-half, he asserts that he has not abandoned the use of the title or character; that, on the contrary, he anticipates it will be resumed; that there are available multiple sponsors but he is holding out for a single sponsor.

When the defendant announced, shortly before its initial showing, that it planned to broadcast a television program entitled "The Law Of The Plainsman",[2] plaintiff notified defendant of his claim. Defendant, however, was of the view that the show did not impinge upon any right of the plaintiff, proceeded with its program, and has presented it weekly over its national hookup ever since. The motion for an injunction was made following the second performance.

The chief character in the defendant's show is a Harvard educated Apache Indian who returns to the west to act as a United States Deputy Marshal. The film on the show does not describe or refer to the character so portrayed as "The Plainsman". At the start and finish of the show the title, "The Law Of The Plainsman", appears across the screen and other than this there is no reference to any "Plainsman".

Thus, the characters portrayed are entirely different—indeed, no claim is made that the principal character in the defendant's shows, simulates or imitates the character role of the plaintiff. To the contrary, the essence of the charge is that because the defendant's character is different—in the plaintiff's own words "a Harvard educated Apache with a page-boy haircut"—whereas he, the plaintiff is "a real cowboy", the defendant's title, "The Law Of The Plainsman", burdens the plaintiff with an undesirable association, tends to destroy the valuable good will which he claims in "The Plainsman", and hinders him from obtaining new sponsorship for his program. All this is based on the assertion that the defendant's title causes confusion with plaintiff's title and that the public will be misled into believing that it is the plaintiff's show, "The Plainsman", centering about his character, that is being presented.

■ Since there is no claim that the defendant's character imitates the plaintiff's character, the "Mutt and Jeff", "Buster Brown",[3] and similar cases where defendant's use of the character created by another was intentional and misleading to the public, are inapposite. The absence of any claim of predatory conduct such as palming off or actual and intentional deception upon the public narrows the issue to the claimed right of the plaintiff to the exclusive use of the title "The Plainsman". Plaintiff contends he is entitled thereto under the common law of unfair competition.

2. Originally the proposed show was announced as "Tales Of The Plainsman" but prior to the initial broadcast the title was changed to "The Law Of The Plainsman".

3. Fisher v. Star Co., 231 N.Y. 414, 132 N.E. 133, 19 A.L.R. 937, certiorari denied, 1921, 257 U.S. 654, 42 S.Ct. 94, 66 L. Ed. 419; New York Herald Co. v. Star Co., D.C.S.D.N.Y., 146 F. 204, affirmed without opinion, 2 Cir., 1906, 146 F. 1023.

Thus, to succeed, he must prove secondary meaning, plus likelihood of confusion.[4] He necessarily urges that the title "The Plainsman" has acquired a secondary meaning in the Plains area—that mere mention of it at once identifies in the public mind his show and the character created therein. Here he makes the further argument that the title adopted by him is fanciful and arbitrary.

■ In opposition, the defendant contends that "The Plainsman" is a general descriptive term—that it is neither arbitrary nor fanciful, but merely descriptive of "a man who lives in the plains" and to support its position it cites dictionary definitions and gives instances of many and varied uses of the title. However, this is not dispositive of the matter since even a descriptive term may achieve a secondary meaning in the public mind.[5] The defendant suggests that if any secondary significance has attached to the title, it is in favor of one Wild Bill Hickok, a typical and well-known western figure about whom a motion picture entitled "The Plainsman" was presented in 1937 and reissued from time to time, as late as 1953. Further, in its attack upon the claim of secondary meaning, the defendant's officers swear that despite its broad experience and its knowledge of the television business, it had never, prior to the claim advanced by the plaintiff, heard of him or the program entitled "The Plainsman"—that search by counsel specializing in such matters failed to disclose plaintiff's use of the title. As to the other essential element of plaintiff's claim, likelihood of confusion, again the defendant disputes the plaintiff. It emphasizes that the titles are not identical.

■ To succeed on this motion, the plaintiff must establish (1) a reasonable probability that he will succeed upon the trial on the basic issues of secondary meaning and likelihood of confusion, and, even if this does appear, (2) that irreparable injury will result if immediate injunctive relief is not granted.[6]

■ I am not persuaded that the plaintiff has sustained his burden. His right to the claimed exclusive use of the title, "The Plainsman", based upon a secondary significance attaching in his favor, is, upon this record, not so clear that it can be said he will prevail upon the trial. No substantial evidence has been submitted to support the charge of likely confusion. The circumstance that, contrary to the advertising by defendant of its full title, "The Law Of The Plainsman", several publications abbreviated the title to "The Plainsman", as a matter of journalistic shorthand, does not establish, at least for the purposes of this motion, that the viewing public has been, or will be, misled into believing that it is the plaintiff's program and the plaintiff's character that is to be presented. No instance has been cited that any viewer of television, familiar with plaintiff's show, expected to see the plaintiff's program when he first saw the defendant's notice or its title across the screen. And, if one did view the defendant's show, there could be no confusion or deception since it depicts adventures in law enforcement by a full-blooded Apache Deputy United States Marshal, whereas the theme of plaintiff's shows was a narration to youngsters of cowboy adventures. The character and subject matters are entirely different.

Neither has plaintiff established that irreparable injury will result if immediate restraint is not granted. His show has not been presented for eighteen months. While he contends he has not abandoned it, no sponsor has appeared, although it is claimed some are interested. The defendant urges that even if

4. Norwich Pharmacal Co. v. Sterling Drug, Inc., 2 Cir., 1959, 271 F.2d 569.

5. Albany Packing Co. v. Crispo, 1929, 227 App.Div. 591, 237 N.Y.S. 614, affirmed without opinion, 1930, 253 N.Y. 607, 171

N.E. 803; Maintenance Co. v. Colletti, Sup.Ct., N.Y.Co.1946, 62 N.Y.S.2d 329.

6. Speedry Products, Inc. v. Dri Mark Products, Inc., 2 Cir., 1959, 271 F.2d 646.

not abandoned, non-use over an extended period seriously impairs the claim that there exists today, if indeed it ever did, a secondary meaning to the title.[7]

The registration of the title, the validity of which is challenged by the defendant, affords no ground for relief since in any event the same basic issues must be met by the plaintiff. The registration conferred no greater rights upon the plaintiff than he enjoyed at common law.[8]

The motion is denied.

The foregoing is without prejudice to an application by the plaintiff, if so advised, to apply for a preference in accordance with the rules of this Court.

Settle order on notice.

---

7. See Golenpaul v. Rosett, 1940, 174 Misc. 114, 18 N.Y.S.2d 889.

8. Willson v. Graphol Products Co., 1951, 188 F.2d 498, 38 CCPA 1030.