DANIEL GOLENPAUL and ANN GOLENPAUL, Doing Business under the Firm Name and Style of DAN GOLENPAUL ASSOCIATES, Plaintiffs, *v.* WALTER ROSETT and Others, Defendants.

Supreme Court, Special Term, New York County, March 11, 1940.

*Charles F. Goldberg [Richard W. Dammann* of counsel], for the plaintiffs.

*Louis N. Field [A. A. Stander* of counsel], for the defendants.

WALTER, J. The originators and owners of the currently popular radio program entitled " Information Please " here seek to enjoin the defendants from using that combination of words as the title of a magazine. The defendants Rosett and Braverman have defaulted and apparently are content to be enjoined. Resistance comes only from the defendants Boressoff and Information Publications Corporation, which Boressoff owns and controls, and those two are hereinafter referred to and spoken of as the defendants.

Since May, 1938, the title " Information Please " has been used and is now being used to designate a weekly radio program broadcast over a large network of radio stations and listened to by vast numbers of radio owners, and in the minds of more people than possibly could have been reached by any advertising medium in use in pre-radio days that name or title has come to signify a radio program during which persons of prominence in various fields of endeavor and achievement answer or fail to answer such questions as the controllers of the program allow to filter through their hands

from a vast body of interested listeners who find pleasure and excitement, not only in listening to the answers or failures to answer, but also in submitting questions which are designed, in the language of one of the slogans used in popularizing the program, to " stump the experts."  At intervals more or less appropriate the listeners are also expected to receive education in the merits of the product of the particular manufacturer who sponsors the program.  The plaintiffs have also used the title " Information Please " as the title of a book and are using it in moving pictures.

In earlier days it doubtless would have been held that a magazine is in competition with only another magazine and that, therefore, the use by one person of two words so commonplace as " information " and " please " to designate either a book or a moving picture or a verbal program carried over the air would not prevent another person from using the same words as the title of a magazine.  At the present time, however, the law of " Unfair Competition " lays stress upon the element of *unfairness* rather than upon the element of *competition* and recognizes that where any name or mark or symbol, even though consisting of commonplace words of the English language, has come to signify in the public mind the product or business of a particular individual or group of individuals, such name or mark or symbol cannot be used by another individual or group of individuals in such way as to lead the public to believe that the product or business of the latter is the product or business of the former.  Illustrations of that rule are numerous.  (*Philadelphia Storage Battery Co.* v. *Mindlin,* 163 Misc. 52; *Tiffany & Co.* v. *Tiffany Productions, Inc.,* 147 id. 679; affd., 237 App. Div. 801; affd., 262 N. Y. 482; *Forsythe Co., Inc.,* v. *Forsythe Shoe Corp.,* 234 App. Div. 355; *Vogue Co.* v. *Thompson-Hudson Co.,* 300 Fed. 509, 512; *Yale Electric Corp.* v. *Robertson,* 26 F. [2d] 972, 974; *Patten* v. *Superior Talking Pictures, Inc.,* 8 F. Supp. 196.)

If the defendants should publish a magazine under the title " Information Please," and especially a magazine which is devoted to radio entertainment and moving pictures to the extent indicated by defendants' evidence, it is inevitable that there would be created " A false impression of a trade connection " (*Philadelphia Storage Battery Co.* v. *Mindlin, supra,* p. 54), and under the authorities above cited it is plain that an injunction should issue unless it is prevented by the fact that here it is the defendants, and not the plaintiffs, who first used the words " Information Please " as identifying a product or business.

The facts respecting the defendants' use of those words are these: In September and October, 1936, a year and a half before the plaintiffs' radio program was initiated, the defendants published

two issues of a magazine entitled "Information Please." Of the first issue 8,000 copies were printed, and of the second issue 10,000 copies were printed. Their original investment of $3,000 was exhausted in publishing those two issues, and bills of something over $600 were left unpaid, and the conceded reason why no further issues were published is that the defendants lacked the necessary money. The sale price of the magazine was twenty-five cents per copy, and as the proceeds of sale did not bring in enough money to enable them to publish a third issue, I must conclude that the number of copies actually sold was considerably less than the number of copies printed. The number of actual subscribers was practically negligible. The name of the magazine, or of the publisher, was put upon the mailing lists of various concerns who make a practice of sending out so-called "releases" of matter which such concerns desire to have published, and a considerable number of such "releases," and also some other correspondence, was received by the defendants at intervals to and incluaing September, 1937. Neither the name of the magazine nor the name of the corporate publisher thereof was listed in the New York Telephone Directory, except in the winter edition of 1936, in which it was listed as being located at the place where the defendant Boressoff resided, which place, he testified, he also used as an office. Neither the magazine nor the corporate publisher appears ever to have had any office other than what fairly may be termed desk room accorded to Boressoff. No minute book and no account book of the publishing corporation was produced, although production thereof was requested in substantiation of Boressoff's testimony.

Boressoff, the prime mover in the publication of the magazine, testified that he never intended to abandon publication of the magazine, but I cannot find that his intent to continue, or to resume, at any time ever amounted to anything more than a hope that somehow from some one he might be able to get the necessary money. The most tangible evidence of actual intent, as distinguished from hopeful expectation, is a somewhat nebulous agreement that if a success could be made of another publication in which Boressoff was interested, then the printer of that other publication would consider doing the necessary printing for "Information Please." Better evidence, in my opinion, of the kind of intent which Boressoff had to resume publication of "Information Please" is his public advertisement for someone who would invest $12,000 in a "new" magazine. No response appears to have been received from that advertisement.

Relevant in this connection is the conversation which Boressoff says he had with the plaintiff Golenpaul in June, 1938, shortly

after plaintiffs' radio programs commenced. He says that he then claimed that the radio programs under the title " Information Please " were an infringement of his rights, and notified Golenpaul to stop them because they were preventing him from carrying out his " job " of re-establishing the magazine, and that Golenpaul said that if he thought his rights were being infringed he should go ahead and sue. No suit ever was brought. Efforts through an attorney to obtain a cash settlement of $2,500 were definitely rejected in October, 1938, and nothing of consequence then happened until about November, 1939, when it was announced that arrangements to resume publication of the magazine had been made.

Whether or not the publication of the two issues of the magazine under the circumstances here disclosed was sufficient to cause the title " Information Please " to be associated in the public mind with the product of business of the defendants is, I think, rather doubtful; but, assuming that fact in defendants' favor, the evidence clearly establishes that such association had terminated and disappeared long before the plaintiffs in good faith adopted that title for their radio program. I further find that it was only because the plaintiffs had made the title prominent and popular that the defendants were able to make such arrangements as were made in November, 1939, to resume publication of the magazine, and that such arrangements were made with the desire and intent to trade upon and take advantage of the prominence and popularity which the plaintiffs had created.

The case thus simmers down to the question whether Boressoff's purely subjective " intent " to resume publication of the magazine if and when he could obtain the necessary money prevents the injunction to which the plaintiffs otherwise would be entitled.

Rather strong statements appear in numerous cases to the effect that to constitute abandonment of a trade-mark or trade name there must not only be non-use but an intent to abandon (*Saxlehner* v. *Eisner & Mendelson Co.*, 179 U. S. 19, 31; *Baglin* v. *Cusenier Co.*, 221 id. 580, 597, 598; *Beech-Nut Packing Co.* v. *Lorillard Co.*, 273 id. 629, 632, which are cited in *Rockowitz C. & B. Corp.* v. *Madame X Co., Inc.*, 248 N. Y. 272, and *Neva-Wet Corp.* v. *Never Wet Processing Corp.*, 277 id. 163); and if those expressions are to be taken literally, abandonment never can be found in any case where abandonment is denied and the denial is supported by an oath as to the swearer's state of mind which the trier of the facts is unwilling to say is false swearing. That result is plainly inconsistent with and wholly nullifies the well-settled principle that a trade-mark right is not a right in gross or at large, like a copyright or a patent,

and exists only as appurtenant to an existing business in connection with which it is used. (*Hanover Milling Co.* v. *Metcalf*, 240 U. S. 403, 413, 414; *United Drug Co.* v. *Rectanus Co.*, 248 id. 90, 97, which likewise are cited and quoted in *Rockowitz C. & B. Corp.* v. *Madame X Co., Inc.*, 248 N. Y. 272, 278, 279, and cited in *Neva-Wet Corp.* v. *Never Wet Processing Corp.*, 277 id. 163.) As the Court of Appeals expressly reiterates that principle in the *Madame X* case, and as it also states in the *Neva-Wet* case, that intermittent periods of non-user do not destroy the right " if the business employing the trade-marks was more or less continuous " (277 N. Y. 175), I think those cases are not inconsistent with but actually sustain the view that when the business itself actually ceases for such a length of time and under such circumstances that the mark or name actually no longer signifies that business in the mind of the public, the right to the mark or name is lost, despite the existence of a purely subjective " intent " on the part of the user to re-engage in the business and resume the use of the mark or name at some indefinite time in the future; and that, I think, is the sounder view and the only one consistent with the essential nature of a mark or name as a mere incident or appurtenance of a business. (*Royal Baking Powder Co.* v. *Raymond*, 70 Fed. 376, 380, 381; affd., 85 id. 231; *Reconstruction Finance Corp.* v. *Menihan Corp.*, 28 F. Supp. 920, 923; 30 Col. L. Rev. 695, 697; Derenberg, Trade-Mark Protection and Unfair Trading [1936], pp. 598–601.)

Judgment for the plaintiffs in accordance with the prayer of the complaint is accordingly granted, with costs.