**Jane M. BOOKING, Plaintiff–Appellant,**

v.

**GENERAL STAR MANAGEMENT COMPANY and General Star Indemnity Company, Defendants–Appellees.**

**Docket No. 00–9392.**

United States Court of Appeals, Second Circuit.

Argued June 4, 2001.

Decided June 20, 2001.

Stephen W. Gebo, Conboy, McKay, Bachman & Kendall, LLP, Watertown, NY, for appellant.

Debra A. Norton, Sliwa & Lane, Buffalo, NY, for appellees.

Before CABRANES and SACK, Circuit Judges.[1]

JOSÉ A. CABRANES, Circuit Judge:

On this appeal, we review a judgment of the United States District Court for the Northern District of New York (Thomas J. McAvoy, *Judge* ) granting summary judgment to defendants-appellees General Star Management Company and General Star Indemnity Company (collectively, "General Star"), and denying summary judgment to plaintiff-appellant Jane M. Booking ("Booking").

General Star is an unlicensed liability insurer, and Booking was allegedly injured by General Star's insured, National Framing Contractors, Inc. ("National"). Booking obtained a default judgment against National, and initiated this direct action to collect on the judgment against General Star. General Star disclaimed coverage of National's liability for Booking's injury, and moved for summary judgment. Booking cross-moved for summary judgment.

The District Court granted General Star's motion and denied Booking's cross-motion on the ground that General Star had properly disclaimed coverage because the notice that it had received of Booking's injuries was defective under the terms of the relevant insurance contract.

We hold, *inter alia*, that (1) Texas law controls the interpretation of the insurance contract at issue here; (2) under Texas law, a liability insurer such as General Star may generally disclaim coverage on the basis of defective notice only if it has been prejudiced by such defects; and (3) further development of the record as to prejudice is appropriate.

Accordingly, we vacate the judgment of the District Court and remand the cause for further proceedings.

### I.

The following facts are construed in the light most favorable to Booking. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

On February 14, 1995, Booking was injured in New York while climbing a staircase that was being dismantled by National employees ("the accident"). National then went out of business, and Booking attempted to determine whether National was carrying liability insurance when she was injured. On December 17, 1996, a certificate of insurance was discovered that suggested that National was insured at all relevant times by General Star. By letter dated the next day—December 18, 1996—General Star was notified of the accident. Soon thereafter, however, it disclaimed coverage of National's liability for Booking's injury, citing National's failure to

---

1. Judge Chester J. Straub, originally a member of the panel sitting on June 4, 2001, recused himself and did not participate in this appeal. The remaining members of the panel, who are in agreement, have decided the case, pursuant to 2D CIR. R. § 0.14(b).

provide the notice of the accident required by the pertinent National–General Star insurance contract ("the policy").[2]

Booking initiated a tort action against National in New York State Supreme Court, Jefferson County, in March 1996. Following an uncontested trial, judgment was entered in Booking's favor on October 23, 1998 ("the judgment"). Booking served the judgment on General Star, but General Star did not satisfy it. Accordingly, in February 1999, Booking initiated this direct action in New York State Supreme Court, Jefferson County. The action was later removed to the United States District Court for the Northern District of New York pursuant to the federal removal statute, 28 U.S.C. §§ 1441–1446.

In the District Court, General Star moved for summary judgment, arguing that it was entitled to disclaim coverage because of National's failure to provide adequate notice of the accident. Booking then cross-moved for summary judgment on the ground that General Star had received adequate notice.

The initial memoranda that supported General Star's motion and Booking's cross-motion relied exclusively on New York law. However, in her Reply Memorandum of Law before the District Court, Booking pressed the following argument: (1) Texas law, not New York law, controls interpretation of the policy; (2) under Texas law, liability insurers can disclaim coverage on the basis of notice defects only if they are prejudiced by such defects;[3] (3) because General Star could not show that it was prejudiced by any defects in the notice it received, it could not disclaim coverage; and (4) General Star was therefore respon-

sible for National's liability to Booking so that Booking was entitled to collect on the judgment against General Star.

Oral argument before the District Court on the summary judgment cross-motions was held on September 11, 2000. A focal point of the argument was the parties' divergent views as to whether New York law or Texas law was controlling. At oral argument, General Star submitted a brief on this choice of law issue, arguing for the application of New York law. Following argument, and at the District Court's request, Booking did so as well, adhering to her revised stance that Texas law should be applied.

By Decision and Order dated September 28, 2000, the District Court granted defendant's motion for summary judgment and denied plaintiff's cross-motion. The District Court held that New York law applied because the parties' opening briefs assumed that such was the case. While observing that Texas law would have governed had the issue been timely raised, the District Court declined to consider the possibility that Texas law was controlling because it believed that new arguments may not be raised for the first time in reply papers. Applying New York law, the District Court held that General Star had not received notice that comported with the requirements of the policy, and that General Star was therefore entitled to disclaim coverage.

Judgment was entered on September 28, 2000 and this timely appeal followed. We have subject matter jurisdiction pursuant to 28 U.S.C. § 1291 and 28 U.S.C. § 1332, and we review the District Court's grant of summary judgment *de novo*. *See Greater*

---

**2.** In pertinent part, the policy states that National "must see to it" that General Star is notified "as soon as practicable of an 'occurrence' … which may result in a claim."

**3.** Under New York law, no such showing of prejudice is generally required. *See post* at 420.

*N.Y. Metro. Food Council, Inc. v. Giuliani,* 195 F.3d 100, 104 (2d Cir.1999).

## II.

### A.  REACHING THE CHOICE OF LAW ISSUE

On appeal, Booking argues that Texas law governs the interpretation of the policy, and General Star contends that New York law controls that question. As noted above, the District Court did not pass on this choice of law issue because it believed that it lacked the discretion to do so because the issue was raised for the first time in Bookings' reply memorandum. *See ante* at 417. The basis for this conclusion was apparently an analogy to *our* practice of not considering arguments raised for the first time in reply briefs. *See* Decision and Order at 4 (stating that "new arguments may not be raised in reply papers," and citing for this proposition *Ernst Haas Studio, Inc. v. Palm Press, Inc.,* 164 F.3d 110, 112 (2d Cir.1999), in which we declined to consider an argument raised for the first time in an appellant's reply brief).

We are skeptical of this analogy. The courts of appeals generally do not consider arguments raised for the first time in reply briefs because, *inter alia,* such is the dictate of Rule 28(a) of the Federal Rules of Appellate Procedure, *see Knipe v. Skinner,* 999 F.2d 708, 711 (2d Cir.1993), and because if an appellant raises a new argument in a reply brief an appellee may not have an adequate opportunity to respond to it. Moreover, by the time an appellate brief is drafted, a case has been percolating in the federal courts for long enough for the appellant's counsel to have selected the arguments that he will rely upon. It is therefore reasonable to expect that he will include all of these arguments in his opening brief.

These considerations, however, do not apply with full force in a district court. Rule 28 of the Federal Rules of Appellate Procedure, for example, has no analogue in the Federal Rules of Civil Procedure, and in most cases trial judges can provide parties with an adequate opportunity to respond to particular arguments by ordering additional briefing or an extra round of oral argument. Accordingly, we doubt that district courts lack all discretion to consider arguments raised for the first time in reply briefs—especially when, as here, they order additional briefing on the argument pressed in the reply brief.

All this said, we need not and do not reach here the question of whether the District Court had discretion to consider Booking's choice of law argument. Answering this question would seem to require that we make new law, and we are reluctant to do so. Accordingly, in determining whether we may address Booking's choice of law argument we will follow a familiar, trod path.

In general, "a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). *See generally* Robert J. Martineau, *Considering New Issues on Appeal: The General Rule and the Gorilla Rule,* 40 VAND. L.REV. 1023, 1026–34 (1987) (describing the historical development of this rule and the various justifications for it). This rule, however, is a prudential one, and we have broad discretion to consider issues not raised in the District Court. *See Lo Duca v. United States,* 93 F.3d 1100, 1104 (2d Cir.1996); *see also, e.g., Greene v. United States,* 13 F.3d 577, 586 (2d Cir. 1994) ("Entertaining issues raised for the first time on appeal is discretionary with the panel hearing the appeal."). It follows therefore that we have discretion to consider issues that were raised, briefed, and

argued in the District Court, but that were not reached there.[4]

■ Here, we will exercise that discretion for two reasons. First, the question of whether Texas or New York law is controlling is a purely legal issue. *See Greene*, 13 F.3d at 586 (reaching such an issue on appeal); *see also Baker v. Dorfman*, 239 F.3d 415, 420 (2d Cir.2000) (noting that we have been "more likely to exercise our discretion" to consider an issue not raised in the District Court "where the issue is purely legal"). Indeed, the Courts of Appeals often opt to consider issues not raised in the District Court that concern the appropriate choice of law. *See* Martineau, *supra*, at 1072–73 (collecting cases). For example, in *Marino v. New York Teleph. Co.*, 944 F.2d 109 (2d Cir. 1991), the District Court relied on N.Y. INS. LAW § 3420(d) (McKinney 1991), which applies only to insurance contracts "delivered or issued" in New York. We held that the insurance contract in question had not been so "delivered or issued," even though the matter had not been raised in the District Court. *See Marino*, 944 F.2d at 113 ("the misapplication of a statute is a clear error of law and one that we feel compelled to recognize").

Second, on the facts of this case, not considering the choice of law issue will likely lead to a substantial injustice. *See Dorfman*, 239 F.3d at 420 (noting that we have been "more likely to exercise our discretion" to consider on appeal an issue not raised in the district court "where consideration of the issue is necessary to avoid manifest injustice"). If we do not consider the choice of law issue, New York law will apply, and under New York law it is apparent that it will be all but impossible for Booking to collect the judgment entered in her favor in the tort action. *See generally ante* at 416 (noting that National is no longer a going concern). By contrast, if we consider the choice of law issue, Texas law will control, *see post* at II.C., and Booking may be able to collect the judgment.

In short, we will consider the choice of law issue.[5]

### B. GENERAL CHOICE OF LAW PRINCIPLES

■ Because our subject matter jurisdiction here is grounded on the diversity statute, and because the District Court whose judgment we are reviewing sits in New York, we must determine the body of substantive law that applies here with reference to New York's choice of law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under these rules, the first step in any choice of law inquiry is to determine whether there is an "actual conflict" between the laws invoked by the parties. *See In re Allstate Ins. Co.*, 81 N.Y.2d 219, 223, 597 N.Y.S.2d 904, 905, 613

---

4. We have such discretion even if an argument that is pressed on appeal was abandoned or waived in the District Court. *See, e.g., Maska U.S., Inc. v. Kansa Gen. Ins. Co.*, 198 F.3d 74, 80 (2d Cir.1999) (abandonment); *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 822 (2d Cir.1997) (waiver).

5. At some points in its brief, General Star suggests that we should avoid reaching the choice of law issue not because the District Court did not reach it, but rather because Booking abandoned or waived any choice of law argument by failing to raise it in her opening brief. Arguments that were abandoned or waived in the District Court may be considered on appeal when failure to do so would cause "manifest injustice," *see Maska U.S., Inc.*, 198 F.3d at 80 (abandonment); *DiRussa*, 121 F.3d at 822 (waiver), and such is the case here, *see ante* at 419. Accordingly, even assuming *arguendo* that Booking abandoned or waived her choice of law argument by failing to press it in her opening brief in the District Court, we will consider it here.

N.E.2d 936 (1993). If there is such a conflict, the court must then classify the conflicting laws by subject matter with reference to New York law. *See, e.g., Tanges v. Heidelberg N. Am., Inc.,* 93 N.Y.2d 48, 54, 687 N.Y.S.2d 604, 606, 710 N.E.2d 250 (1999) (explaining that New York law determines whether, for choice of law purposes, a Connecticut statute of limitations is "substantive" or "procedural"); *see also, e.g., Martin v. Julius Dierck Equip. Co.,* 52 A.D.2d 463, 466–67, 384 N.Y.S.2d 479, 482 (2d Dept.1976) (classifying a products-liability claim as sounding in tort, not contract). Having classified the conflicting laws, the court must then select and apply the proper body of choice of law rules.

## C. CHOICE OF LAW ANALYSIS

In light of the principles described above, we begin by considering whether there is an "actual conflict" between the laws invoked by the parties. We hold that there is.

█ Under New York law, it is well-established that a liability insurer may generally disclaim coverage on the basis of defective notice regardless of whether the insurer was prejudiced by the defect ("the no-prejudice rule"). *See, e.g., Utica Mut. Ins. Co. v. Fireman's Fund Ins. Cos.,* 748 F.2d 118, 121 (2d Cir.1984) (citing *Security Mut. Ins. Co. v. Acker–Fitzsimons Corp.,* 31 N.Y.2d 436, 440, 340 N.Y.S.2d 902, 905, 293 N.E.2d 76 (1972)).

█ Texas law on this score is arguably a bit different. The parties disagree as to whether Texas follows the no-prejudice rule, or whether under Texas law a liability insurer may disclaim coverage on the basis of defective notice only if it was prejudiced by the defect ("the prejudice rule").

In *Members Mutual Insurance Company v. Cutaia,* 476 S.W.2d 278 (Tex.1972), the Texas Supreme Court articulated the no-prejudice rule. It held that compliance with an insurance contract's notice requirements was a condition precedent to an insurer's coverage obligations. *Id.* at 279. Accordingly, the *Cutaia* Court held that defective notice absolves the insurer of its responsibility to provide coverage even if the insurer was not prejudiced by the defect. *Id.*

Approximately one year after *Cutaia* was decided, the Texas State Board of Insurance ("Board") issued Order No. 23080 ("the Order"). *See Chiles v. Chubb Lloyds Ins. Co.,* 858 S.W.2d 633, 635 (Tex. App.1993). Under the Order, a liability insurer cannot disclaim coverage on the basis of defective notice unless the insurer was prejudiced by the defect. *See id.* Thus, *Cutaia* was effectively overruled, and the prejudice rule was adopted.

However, the Board's statutory authority does not extend to *unlicensed* insurers. *See* TEX. INS.CODE ANN. art. 5.13–2, § 2 (Vernon 2001). Accordingly, General Star contends that, as to unlicensed insurers such as itself, the no-prejudice rule announced in *Cutaia* was not displaced by the Order. Therefore, General Star argues, unlicensed insurers may disclaim coverage on the basis of defective notice just as they had before the Board issued the Order—that is, without regard to whether the notice defects prejudiced them.

This argument, however, has been flatly rejected by the United States Court of Appeals for the Fifth Circuit. *See Hanson Prod. Co. v. Americas Ins. Co.,* 108 F.3d 627, 629 (5th Cir.1997). Sitting in diversity, the Fifth Circuit noted that the no-prejudice rule was out of step with modern insurance jurisprudence, and that *Cutaia* had been seriously undermined by *Her-*

*nandez v. Gulf Group Lloyds,* 875 S.W.2d 691 (Tex.1994), a subsequently decided Texas Supreme Court case. *See Hanson,* 108 F.3d at 630–31.

*Hernandez* held that an insurer could not disclaim coverage based on an insured's noncompliance with an insurance contract's so-called "settlement-without-consent" clause unless the insurer was prejudiced by such noncompliance. *See Hernandez,* 875 S.W.2d at 692. The rationale for this holding was that insurance contracts are subject to the general principle of contract law that one party to a contract is discharged from its contractual obligations only if the other party has committed a *material* breach. *See id.* And, *Hernandez* reasoned, because a breach of a "settlement-without-consent" clause that does not prejudice an insurer is not material, an insurer cannot disclaim its contractual obligation to provide coverage on the basis of it. *See id.* at 693.

In turn, the Fifth Circuit reasoned that if under *Hernandez* breaches of "settlement-without-consent" clauses must be material because of general principles of contract law—and not because of considerations particular to such clauses—then those same general principles compel the conclusion that an insurer cannot disclaim its obligations on the basis of a breach of a notice clause unless *that* breach is material. *See Hanson,* 108 F.3d at 631. And just as a breach of a "settlement-without-consent" clause is material only if it prejudices the insurer, so too a breach of a notice clause (by provision of defective notice) is material only if it prejudices the insurer. *See id.* Accordingly, the Fifth

Circuit concluded that *Cutaia* and *Hernandez* are inconsistent, and predicted that the Texas Supreme Court would overrule *Cutaia* by holding that an unlicensed insurer may not disclaim coverage on the basis of defective notice without showing that it was prejudiced by the defect. *See Hanson,* 108 F.3d at 631.

We are bound by the Fifth Circuit's prediction, *see Factors Etc ., Inc. v. Pro Arts, Inc.,* 652 F.2d 278, 281–83 (2d Cir. 1981) (holding that, absent certain circumstances not relevant here, we will conclusively defer to a federal court of appeals's interpretation of the law of a state that is within its circuit), and we are confident that the New York courts would concur in the Fifth Circuit's well-reasoned assessment as to the course that the Texas Supreme Court will likely take.[6]

■ Accordingly, this case presents an "actual conflict." A New York court would hold that, under New York law, General Star may disclaim coverage on the basis of notice defects, without regard to prejudice, *see ante* at 420, but it would hold that, under Texas law, General Star may disclaim coverage on the basis of notice defects only if it has been prejudiced by the defects. *See ante* at 421. *See generally Rogers v. Grimaldi,* 875 F.2d 994, 1002 n. 10 (2d Cir.1989) (describing the "two-step process" whereby a federal diversity court applying the law of a state other than the one in which it sits must predict (1) what the courts of the state in which it sits would decide as to (2) what the courts of another state would decide).

---

**6.** The Court of Appeals for the Fifth Circuit has suggested that *Hanson*'s prediction as to the direction that the Texas Supreme Court will take may make more sense in the context of occurrence-based policies issued by unlicensed insurers than it does in the context of claims-based policies issued by unlicensed insurers. *See Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.,* 174 F.3d 653, 658–59, 660 n. 3 (5th Cir.1999). However, this apparent qualification of *Hanson*'s prediction need not detain us, as it is clear that the policy at issue here was occurrence-based.

■ These conflicting laws concern the appropriate interpretation of the notice provisions of the policy. Accordingly, we must apply the New York choice of law rules that govern disputes as to the interpretation of insurance contracts. These rules require consideration of the so-called "grouping of contacts" theory of choice of law applied by New York courts in ordinary contract cases, and they may require "interest" analysis of the sort applied in tort cases.[7] *See In re Allstate Ins. Co.*, 81 N.Y.2d at 226–27, 597 N.Y.S.2d 904, 613 N.E.2d 936.

For substantially the reasons stated by the District Court, we believe that under these hybrid rules, Texas substantive law controls the question of how the policy should be interpreted. *See* Decision and Order 9–11. First, as the District Court noted, the policy was negotiated in Texas, the "place of contracting" was Texas, and the parties to the policy are domiciled in Texas and Connecticut. *See In re Allstate Ins. Co.*, 81 N.Y.2d at 226–27, 597 N.Y.S.2d 904, 613 N.E.2d 936 (describing the relevance of facts of this kind to an insurance contract choice of law analysis). Moreover, the District Court correctly observed

7. These "modern" choice of law theories were articulated by the New York Court of Appeals in *Auten v. Auten*, 308 N.Y. 155, 124 N.E.2d 99 (1954) (Fuld, J.) (contracts) and *Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963) (Fuld, J.) (torts), and all but swept aside the traditional choice of law rules that had been collected in the 1934 Restatement (First) of Conflict of Laws. The traditional rules—embodied in pithy Latin maxims such as *lex loci delicti*—drew intellectual coherence from the "vested rights" theory of the late Professor Joseph H. Beale of the Harvard Law School, *see generally* 1–3 Joseph H. Beale, A Treatise on Conflict of Laws (1935), who was the Reporter for the First Restatement. The traditional rules had some impressive adherents, *see, e.g.*, *Western Union Tel. Co. v. Brown*, 234 U.S. 542, 547, 34 S.Ct. 955, 58 L.Ed. 1457 (1914) (Holmes, J.), and were said to lend useful predictability to the process by which courts selected the body of law that was to govern a particular dispute. But in the law virtues often spawn vices, and the predictability of the vested rights regime, some courts suggested, was being achieved only at the cost of undue "rigid[ity]," *Auten*, 308 N.Y. at 161, 124 N.E.2d 99. Legal Realist-minded scholars yeasted this criticism with the argument that Professor Beale's vested rights theory rested on the formalist fiction that the parties to a dispute have rights that "vest" before a court has resolved their dispute and delineated those rights. *See, e.g.*, Walter Wheeler Cook, The Logical and Legal Basis of the Conflict of Laws 30 (1942) (quoting, *inter alia*, Justice Holmes's conception of rights as

merely "the hypostasis of a prophecy"). Building on this work, others criticized the traditional choice of law rules for focusing on the assertedly accrued rights of individuals under the law rather than on the social and instrumental purposes of the law. *See, e.g.*, Lea Brilmayer, *Rights, Fairness, and Choice of Law*, 98 Yale L.J. 1277, 1284 (1989) (describing this argument). Of those pressing this latter critique, none was more influential than the late Professor Brainerd Currie of the Duke Law School, whose work greatly influenced "modern" choice of law theories such as those articulated in *Auten* and *Babcock* by the New York Court of Appeals. *See, e.g.*, *Intercontinental Planning, Ltd. v. Daystrom, Inc.*, 24 N.Y.2d 372, 385–86, 300 N.Y.S.2d 817, 828, 248 N.E.2d 576 (1969) (citing Currie's work). Recently, the pendulum may have begun to swing back, and in the view of some leading scholars—Professor Lea Brilmayer of Yale, for example, who is often described as a "neo-territorialist"—much of modern choice of law jurisprudence is "a remedy every bit as distressing as the disease it was designed to cure." Lea Brilmayer, *Interest Analysis and the Myth of Legislative Intent*, 78 Mich. L.Rev. 392 (1980) *See also, e.g.*, Lea Brilmayer, *The Choice of Law Revolution in Connecticut*, 62 Conn. B.J. 373 (1988) (urging caution by Connecticut courts in abandoning traditional choice of law rules). Where these debates will end we cannot say, and we are of course constrained not to enter them. *See Klaxon Co.*, 313 U.S. at 497, 61 S.Ct. 1020. We must apply the choice of law rules that New York has itself selected, *see id.*, and in the text we do so.

that "[t]here is no evidence in the record tending to suggest that the contracting parties ever contemplated performance of [the policy] in New York, or otherwise reasonably foresaw that New York law could apply here." Decision and Order at 10. *See generally Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*, 84 N.Y.2d 309, 318, 618 N.Y.S.2d 609, 613, 642 N.E.2d 1065 (1994) (suggesting that such considerations may be relevant to an insurance contract choice of law analysis). Finally, the District Court noted that while Texas has indicated its interest in having Texas law govern the interpretation of insurance contracts in cases such as this one, *see* Decision and Order at 10 (collecting references to Texas law), New York has no interest in the issue of what law is controlling here because the policy "was issued by a foreign corporation to a foreign corporation and [Booking] was not a party to [it]."[8] *Id.* (citing *In re Allstate Ins. Co.*, 81 N.Y.2d at 226–27, 597 N.Y.S.2d 904, 613 N.E.2d 936).

In sum, we hold that Texas law controls the interpretation of the policy. Accordingly, to disclaim coverage here on the basis of notice defects, General Star must show that it was prejudiced by these defects.[9]

The question of what constitutes such prejudice is a factual one, *see* 46 Tx. Jur.3d Ins. Contracts and Coverage § 944 (1995) (collecting cases), and General Star con-

tends that it has had insufficient opportunity to build a record as to prejudice. Accordingly, we will remand the cause to the District Court so that the parties can supplement the record.

## III.

To summarize, we hold, *inter alia*, that

(1) Texas law controls the interpretation of the insurance contract at issue here;

(2) under Texas law, a liability insurer may generally disclaim coverage on the basis of a defective notice only if it has been prejudiced by such defects; and

(3) further development of the record as to prejudice is appropriate.

Accordingly, we vacate the judgment of the District Court and remand the cause for further proceedings consistent with this opinion.

---

8. As the District Court pointed out, this does not necessarily mean that New York has no interest in this case. Indeed, New York may have an interest in ensuring that its residents are able to enforce judgments. However, while this interest in judgment-enfòrcement may be relevant to the question of the law that supplies the cause of action that permits (or does not permit) Booking to proceed directly against General Star, *see post* n. 9, it is not relevant to the question of the law that governs interpretation of the policy.

9. In holding that Texas law controls the interpretation of the National General Star policy, we express no opinion as to the question of what body of law supplies the cause of action under which Booking proceeds directly against General Star. The question may prove to be a material one because the laws of different jurisdictions may import different limitations on direct actions and when they may proceed. We leave this question for the District Court to consider in the first instance on remand, with the benefit of full briefing.