**United States Court of Appeals
Fifth Circuit**

**F I L E D**

**August 26, 2004**

**Charles R. Fulbruge III
Clerk**

**REVISED SEPTEMBER 30, 2004**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 03-50287

_____

VAIS ARMS, INC.,

                                        Plaintiff - Appellee,

versus

GEORGE VAIS

                                        Defendant - Appellant.

----------------------
Appeal from the United States District Court for the Western
District of Texas, San Antonio Division
(SA-01-CA-0868-EP)
----------------------

BEFORE JOLLY, WIENER, and PICKERING Circuit Judges.

WIENER, Circuit Judge.

Defendant-Appellant George Vais appeals from the district court's grant of summary judgment and entry of permanent injunction in favor of Plaintiff-Appellee Vais Arms, Inc. on claims for (1) unfair competition under § 43(a) of the Lanham Act, (2) trademark dilution and injury to business reputation under the Texas commercial code, (3) trademark infringement and unfair competition under Texas common law, and (4) breach of a covenant not to compete ("non-compete agreement") under the Texas commercial code. We affirm.

## I. FACTS AND PROCEEDINGS

From 1996 until May 15, 2000, Defendant-Appellant George Vais ("George") manufactured and sold firearm muzzle brakes[1] through his unincorporated proprietorship, "Vais Arms." During that time, George moved his business to various locations across the United States, including Houston, Texas; Boise, Idaho; Prescott, Arizona; and finally, Kerrville, Texas. He marketed his muzzle brakes primarily through telephone and mail order catalogues, recognizing sales throughout the United States, as well as in some foreign countries.

During the early days of the operation of his business, George developed a severe allergy to household and industrial chemicals and solvents, including those he used in the manufacture of his muzzle brakes. In summer 1999, George's condition worsened significantly, and he decided to leave the United States and return to his native Greece in the hope that the change in environment would improve his health. In preparing for his departure, George asked Ronald Bartlett ("Bartlett"), a gunsmith at a nearby San Antonio sporting goods outlet, whether he would be interested in purchasing George's muzzle brake business and continuing the production and sale of Vais muzzle brakes. Bartlett ultimately

---

[1] A muzzle brake is a device attached to the muzzle (exit end) of a gun barrel to reduce perceived recoil and barrel "bounce" that occurs when the gun is fired.

agreed to purchase George's business and formed the plaintiff corporation "Vais Arms, Inc." for that purpose.

On December 30, 1999, George and Bartlett executed a Bill of Sale in which "Vais Arms," as seller, agreed to sell to "Vais Arms, Inc.," as buyer, all of Vais Arms's assets and equipment, for a lump sum payment of $40,000. The Bill of Sale specified that the transfer would take place on May 15, 2000. It also referenced an attached exhibit listing the assets and equipment to be sold. The total cost of the items listed was $39,848.97, roughly $150 less than the amount of the purchase price.

In addition, the parties executed an Attachment to the Bill of Sale which reads as follows:

The following is agreed to by George Vais and Ronald Bartlett

1. George Vais agrees to the following:
   A. To get a trade name patent for Vais Arms, Inc. and include it in the sale of assets.
   B. To help move the equipment to the new location and make sure everything works. To give instructions for the first two weeks after the move.
   C. If Ronald Bartlett dies before the transfer of all assets, all payments on the note will be refunded to Ronald's estate.
2. Ronald Bartlett agrees to the following:
   A. If George dies before all payments are made on the note, Ronald will make remaining payments on the note to a trust fund for George's children, This trust fund will be established by George's estate.

Finally, the parties executed a non-compete agreement which states, in pertinent part:

Non-Compete Covenant. For a period of 10 years after the effective date of this Agreement, George

3

> Vais Arms will not directly or indirectly engage in any business that competes with Vais Arms, Inc.. This covenant shall apply to the geographical area that includes all U.S. states and countries which are included in the current customer bases.

Vais Arms, Inc. immediately began operations on May 15, 2000. For approximately two weeks thereafter, George worked alongside Bartlett in Bartlett's store, assisting him in the production of the muzzle brakes. When Vais Arms, Inc. became fully operational, George went home to Greece.

Vais Arms, Inc. soon began marketing its muzzle brakes nationwide and, like its predecessor, Vais Arms, quickly recognized sales throughout this country. Early in 2001, however, George returned from Greece and began manufacturing and marketing muzzle brakes under the VAIS mark.

In March 2001, after receiving a series of customer inquiries prompted by George's national advertising campaign, Bartlett applied for federal registration of the VAIS trademark in connection with "firearms components and accessories, namely muzzle brakes." George filed a notice of opposition. As of the time of this appeal, Bartlett's application was still pending.

In September 2001, Vais Arms, Inc. filed suit in the district court alleging that George's use of the VAIS mark infringed Vais Arms, Inc.'s rights as senior user of the mark and that George's sales and marketing efforts violated the terms of the non-compete agreement. Vais Arms, Inc. brought claims for (1) unfair

4

competition under § 43(a) of the Lanham Act,[2] (2) trademark dilution and injury to business reputation under § 16.29 of the Texas Business and Commerce Code,[3] (3) breach of the non-compete agreement under § 15.50 of the Texas Business and Commerce Code,[4] and (4) trademark infringement and unfair competition under Texas common law.  A year later, Vais Arms, Inc. filed a motion for summary judgment on all its claims.  It also filed a motion for a preliminary injunction prohibiting George from using the VAIS mark in connection with the sale of muzzle brakes and from manufacturing, selling, and marketing firearm muzzle brakes in contravention of the non-compete agreement.

In January 2003, the district court granted summary judgment in favor of Vais Arms, Inc. on its claims for unfair competition, trademark dilution and injury to business reputation, and trademark infringement and unfair competition under Texas common law ("the trademark claims").  The district court based its decision on a determination that no genuine issue of material fact existed as to whether George had abandoned the VAIS mark in selling his business to Bartlett and leaving the country.  The court declined to grant summary judgment in Vais Arms, Inc.'s favor as to its claim for

---

[2] See 15 U.S.C.A. § 1125(a)(Supp. 2004).

[3] See TEX. BUS. & COMM. CODE ANN. § 16.29 (Vernon 2002 & Supp. 2004).

[4] See TEX. BUS. & COMM. CODE ANN. § 15.50 (Vernon 2002 & Supp. 2004).

5

breach of the non-compete agreement, however, choosing instead to hold the motion in abeyance pending further briefing on the reasonableness of the agreement's geographic and temporal limitations. Accordingly, the district court entered a preliminary injunction prohibiting George's use of the VAIS mark but reserved ruling on Vais Arms, Inc.'s request for an injunction enforcing the terms of the non-compete agreement.

Following further briefing on the reasonableness of the temporal and geographic limitations of the non-compete agreement, the district court granted Vais Arms, Inc.'s motion for summary judgment on its claim for breach of the non-compete agreement. The court also permanently enjoined George from competing with Vais Arms, Inc. in the manufacturing and marketing of firearm muzzle brakes anywhere in the United States until May 15, 2010. After judgment was entered in its favor, Vais Arms, Inc. filed a motion to alter or amend the judgment to make permanent the court's earlier injunction prohibiting George's use of the "VAIS" mark.

Before the district court could rule on that motion to alter or amend, however, George filed a motion to reconsider the grant of summary judgment on Vais Arms, Inc.'s trademark claims. George advanced that Vais Arms, Inc. waived its abandonment argument by failing to assert it in its complaint, and that he had not had adequate time to respond to Vais Arms, Inc.'s abandonment argument before the district court granted summary judgment. George noted that the issue of abandonment was raised for the first time in Vais

6

Arms, Inc.'s reply brief. The district court rejected George's first ground for reconsideration but allowed the parties additional time to submit supplemental briefs and evidence on abandonment.

After considering the supplemental briefing and evidence on abandonment, the district court determined that no genuine issue of material fact existed as to whether George had abandoned the mark. Accordingly, the court denied George's motion to reconsider its prior grant of summary judgment on Vais Arms, Inc.'s trademark claims. The court then granted Vais Arms, Inc.'s motion to alter or amend the judgment and permanently enjoined George from using the mark in connection with the manufacturing, marketing, or selling of firearm muzzle brakes. The court denied George's motion to stay the injunction pending appeal.

George timely filed notices of appeal from the district court's rulings granting summary judgment, enjoining his use of the VAIS mark, and enjoining his activities in contravention of the non-compete agreement.

## II. ANALYSIS

A. Standard of Review

We review de novo a district court's grant of summary judgment.[5]

B. Trademark Abandonment

---

[5] See Markos v. City of Atlanta, 364 F.3d 567, 570 (5th Cir. 2004).

7

George asserts that genuine issues of material fact exist as to whether he abandoned the VAIS mark when he sold his business to Bartlett and moved back to Greece. He argues that, as a result, the district court erred in holding that Vais Arms, Inc. was the senior holder of the mark and granting summary judgment on Vais Arms, Inc.'s trademark claims. Specifically, George contends that (1) as a matter of law, a person cannot abandon his surname, and (2) even assuming arguendo that a person can abandon his surname, genuine issues of material fact exist as to whether he intended to abandon the VAIS mark. Because he did not argue before the district court that a person cannot abandon his surname, George has waived this argument on appeal.[6] We therefore consider only

---

[6] See Ellison v. Software Spectrum, Inc., 85 F.3d 187, 191 (5th Cir. 1996). We observe, however, that had George preserved this issue for appeal, we would rule against him. A surname is classified as a descriptive word mark. See Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 124 (4th Cir. 1990). As such, "one who claims federal trademark rights in a [surname] must prove that the name has acquired a secondary meaning." Id. at 125; see also Chevron Chem. Co. v. Voluntary Purchasing Groups, Inc., 659 F.2d 695, 702 (5th Cir. 1981). "[A s]econdary meaning exists if in fact a substantial number of present or prospective customers understand the designation when used in connection with a business to refer to a particular person or business enterprise." Perini, 915 F.2d at 125 (quoting Food Fair Stores, Inc. v. Lakeland Grocery Corp., 301 F.2d 156, 160-61 (4th Cir. 1962)). Once it is established that a surname has acquired a secondary meaning, however, it "becomes a trade name or service mark subject to the rule of priority in order to prevent deception of the public," and accordingly is susceptible of abandonment. John R. Thompson Co. v. Holloway, 366 F.2d 108, 113 (5th Cir. 1966)("a man has no absolute right to use his own name, even honestly, as the name of his merchandise or his business").
    Further, George's reliance on the Ninth Circuit's decision in Abdul-Jabbar v. Gen. Motors Corp. as support for his proposition that a person cannot abandon his surname is misplaced. See 75 F.3d

8

whether a genuine issue of material fact exists as to George's intent to abandon.

As a threshold matter, George reasserts on appeal his argument that in the district court Vais Arms, Inc. waived the issue of abandonment by raising it for the first time in its reply to George's memorandum in opposition to Vais Arms, Inc.'s motion for summary judgment. George cites the Sixth Circuit's decision in Atlas Supply Company v. Atlas Brake Shops, Inc. for the proposition that abandonment is "an affirmative defense which must be pleaded; otherwise it is deemed waived."[7] As the district court aptly noted, however, Vais Arms, Inc. does not raise the issue of abandonment as a defense but as a means to show a break in the chain of priority, i.e., that it has become the senior holder of the mark and is therefore entitled to bring claims for infringement and dilution.[8] In that posture, Vais Arms, Inc. was not required to plead abandonment in its complaint, and Atlas is inapposite.

---

1391 (9th Cir. 1996), superseded by 85 F.3d 407 (9th Cir. 1996). Abdul-Jabbar is distinguishable. Unlike the VAIS mark, the surname at issue in Abdul-Jabbar was not a trademark, as the plaintiff had not used the name for commercial purposes for more than ten years prior to filing suit. See id. at 411.

[7] 360 F.2d 16, 18 (6th Cir. 1966).

[8] See J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION §17:4 (4th ed. 2004)("abandonment may become significant in a number of possible legal situations [including the situation where] "abandonment result[s] in a break in the chain of priority where the parties each claim prior use").

George's procedural contention that he was denied an adequate opportunity to respond to Vais Arms, Inc.'s abandonment argument is equally unpersuasive. The record establishes that the district court permitted him to file a supplemental memorandum on the issue of abandonment along with any additional evidence in his favor. Although we have not comprehensively identified all the circumstances under which a district court may rely on arguments and evidence presented for the first time in a reply brief, we have stated that "Rule 56(c) merely requires the court to give the non-movant an adequate opportunity to respond prior to a ruling."[9] Further, those circuits that have expressly addressed this issue have held that a district court may rely on arguments and evidence presented for the first time in a reply brief as long as the court gives the nonmovant an adequate opportunity to respond.[10] As the

---

[9] Southwestern Bell Tel. Co. v. City of El Paso, 346 F.3d 541, 545 (5th Cir. 2003).

[10] See, e.g., Seay v. Tenn. Valley Auth., 339 F.3d 454, 481-482 (6th Cir. 2003)("the purposes of notice and opportunity to respond extend Rule 56(c) to the situation where the moving party submits in a reply brief new reasons and evidence in support of its motion for summary judgment, and require a district court to allow the nonmoving party an opportunity to respond"); Booking v. Gen. Star Mgmt. Co., 254 F.3d 414, 418 (2d Cir. 2001)("Rule 28 of the Federal Rules of Appellate Procedure . . . has no analogue in the Federal Rules of Civil Procedure, and in most cases trial judges can provide parties with an adequate opportunity to respond to particular arguments by ordering additional briefing."); Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1164 (10th Cir. 1998)("when a moving party advances in a reply new reasons and evidence in support of its motion for summary judgment, the nonmoving party should be granted an opportunity to respond")(citing Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc., 754 F.2d 404, 410 (1st Cir. 1985)).

district court allowed George such an opportunity, he cannot now complain that he was prejudiced by Vais Arms, Inc.'s failure to raise the issue until its reply.[11]

As for the substance of George's arguments, he contends that genuine issues of material fact exist on whether he intended to abandon the VAIS mark when he sold his business to Bartlett and moved home to Greece. Under the Lanham Act, a mark is deemed "abandoned"

> [w]hen its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for three consecutive years shall be prima facie evidence of abandonment. "Use" of a mark means the bona fide use of that mark made in the ordinary course of trade, and not made merely to reserve a right in a mark.[12]

The party asserting abandonment must establish that the owner of the mark both (1) discontinued use of the mark and (2) intended not to resume its use. The burden of proof is on the party claiming abandonment.[13]

---

[11] The Seventh Circuit cases cited by George are distinguishable. The district courts in those cases did not permit the nonmovant an adequate opportunity to respond. See Aviles v. Cornell Forge Co., 183 F.3d 598, 605 (7th Cir. 1999)(employee not granted opportunity to respond to arguments raised in reply); Edwards v. Honeywell, Inc., 960 F.2d 673, 674 (7th Cir. 1992)(district court improperly granted summary judgment in favor of defendant on ground not raised by either party; plaintiff was given no opportunity to respond).

[12] See 15 U.S.C.A. § 1127 (Supp. 2004).

[13] See id. at 99.

The parties do not dispute that George discontinued his use of the mark when he sold his business to Bartlett and departed for Greece. Rather, the sole point of contention is whether, in so doing, George possessed the requisite intent to abandon his proprietary right to the VAIS mark.[14] To support its contention that George intended to abandon the mark, Vais Arms, Inc. filed numerous declarations and affidavits from George's former customers in which the declarants or affiants expressed their belief, and the facts on which these beliefs were grounded, that when George sold his business, he had no intention of reentering the muzzle brake business in this country. In addition, Vais Arms, Inc. introduced into evidence an October 2000 shooting magazine article about George's retirement from the muzzle brake business and the transfer of his business to Bartlett. The article describes George's long-time struggle with his allergy to household and industrial chemicals — including those used in the manufacture of muzzle brakes — and his belief that by moving back to his native Greece he could improve his condition. The article makes no mention

---

[14] The distinction between an "intent to abandon" and an "intent not to resume" becomes relevant only when there is an issue of "hoarding" of a mark, i.e., when there is a claim that the owner wanted to retain the mark only to prevent its use by others. See Exxon Corp. v. Humble Exploration Co., 695 F.2d 96, 102 (5th Cir. 1983). As there is no allegation of "hoarding" in this appeal, and as both parties appear to accept George's framing of the issue as whether he "intended to abandon" the VAIS mark, we adopt George's characterization of the element of intent.

12

whether George intended ever to return to the United States or ever to resume his trade, either in the United States or abroad.

For his part, George produced nothing but his own self-serving affidavit, in which he states that he had developed a condition known as "multiple chemical sensitivity" and had left for Greece in the hope that the "clean environment" there would improve his health. He further states conclusionally that he did not "intend to abandon [his] business name of Vais Arms" and that he had "hoped to return after a stay in Greece to pursue []his craft [of manufacturing muzzle brakes]." As objective evidence of his intent not to abandon the mark, George stated that he asked Bartlett to strike out provision 1(A) of the Attachment to the Bill of Sale prior to signing. This provision reads: "George Vais agrees to the following: A. To get a trade name patent [sic] for Vais Arms, Inc. and include it in the sale of assets." A review of the Attachment confirms that the provision was, in fact, struck-out and initialed by Bartlett. This strike-out is not dated.

Bartlett does not contest that he struck-out and initialed provision 1(A). He insists, however, that he did not strike out the provision prior to George's signing the Bill of Sale in December of 1999, as George avers, but did so early in March 2000 to reflect that he no longer held George responsible for registering the VAIS mark. Thus, he asserts, this act cannot be construed as evidence that George lacked the requisite intent to

13

abandon, only that Bartlett would assume responsibility for registering the mark.

That intent is determined by an objective test is too well settled to require citation. Viewing the summary judgment evidence in the light most favorable to George as non-movant — including an assumption that the strike-out occurred, as he contends, at the signing in December, 1999 — we agree with the district court's determination that George failed to establish that a genuine issue of material fact exists as to his intent to abandon the VAIS mark. George's vague, self-serving statements in his affidavit to the effect that he "hoped" to regain his health in Greece and return one day to his "craft of manufacturing muzzle brakes" is not sufficient to raise a genuine issue of material fact as to the element of intent, particularly when viewed in light of Vais Arms, Inc.'s overwhelming evidence of abandonment. "[T]he owner of a trademark cannot defeat an abandonment claim . . . by simply asserting a vague, subjective intent to resume use of a mark at some unspecified future date."[15] At most, George's affidavit establishes only his subjective, uncommunicated desire not to abandon the mark, without any indication of when or how he intended

---

[15] Emergency One, Inc. v. Am. FireEagle, Ltd., 228 F.3d 531, 537 (4th Cir. 2000); see also MCCARTHY ON TRADEMARKS § 17:13("If all a party had to do to avoid a holding of abandonment was to testify that he never had any intent to abandon the mark, or never had any intent not to resume use, then no mark would ever be held abandoned.")(citing Golenpaul v. Rosett, 18 N.Y.S.2d 889 (N.Y. Sup. Ct. 1940)).

14

to resume its commercial use; it does not establish a genuine issue as to his intent to abandon.

Neither does Bartlett's striking out of provision 1(A) in the Attachment raise a genuine issue of material fact as to the element of intent to abandon the mark. That provision referred to George's duty to procure a "trade name patent" and to "include it in the sale of assets"; it says nothing about the actual transfer of the trade name itself. Neither does it make the transfer due at signing, only at some unidentified time in the future. Thus, even assuming that the provision was stricken at or prior to George's signing the Bill of Sale, Bartlett's act of striking it out does not convey an understanding on the part of either party that the VAIS mark was not being transferred along with the sale of the business's other assets. Quite to the contrary, a reasonable reading of provision 1(A) in context of the whole transaction over the five months between the signing of the Bill of Sale and the effective date of the sale confirms that the provision was struck out by Bartlett solely to relieve George of the procedural hassle of registering the VAIS mark before he left the country for health reasons.

As George has failed to produce evidence that would establish the existence of a genuine issue of material fact whether he abandoned the VAIS mark, we affirm the district court's grant of summary judgment in favor of Vais Arms, Inc. on its trademark claims.

C. <u>Non-Compete Agreement</u>

"The enforceability of a covenant not to compete is a question of law for the court."[16]  The Texas Covenants Not to Compete Act provides two criteria for the enforceability of such a covenant.[17] It must (1) be "ancillary to or part of an otherwise enforceable agreement" and (2) contain "limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee."[18]

On appeal, George does not contest that the non-compete agreement was ancillary to the Bill of Sale or that the time limitation (10 years) was reasonable.  He challenges only the geographic extent of its restriction.  That provision, confected by an accountant, not a lawyer, reads:

> This covenant shall apply to the geographical area that includes all U.S. states and countries which are included in the current customer bases.

The district court, on Vais Arms, Inc.'s request, reformed this clause to include only "U.S. states"; Vais Arms, Inc. abandoned any claim to coverage of foreign countries.[19]  Nevertheless, George

---

[16] Butler v. Arrow Mirror & Glass, Inc., 51 S.W.3d 787, 792 (Tex. App. —— Houston [1st Dist.] 2001, no pet.).

[17] TEX. BUS. & COM. COD. ANN. § 15.50(a)(Vernon 2002 & Supp. 2004).

[18] Id.

[19] Section 15.51(c) requires the trial court to reform a covenant not to compete "to the extent necessary to cause . . . the limitations to be reasonable and to impose a restraint that is not greater than necessary . . . ." TEX. BUS. & COM. CODE ANN.

16

contends that the entire geographic limitation is unenforceable as written because it does not define the term "current customer bases," or, alternatively, that the phrase "current customer bases" is ambiguous and therefore a jury should determine its meaning. We disagree.

Albeit the geographic limiter was inartfully drafted, a plain reading confirms beyond quibble that the phrase "current customer bases" modifies only the foreign "<u>countries</u>" aspect of the geographic coverage —— not the "<u>U.S. states</u>" portion. Thus, the covenant as drafted covered (1) "<u>all</u> United States" and (2) any foreign countries in which George had a "current customer base," i.e. sales of muzzle brakes. By reforming the geographic limiter to cover only "U.S. states" in conformity with Vais Arms, Inc.'s voluntary abandonment of foreign coverage, the district court eliminated any potential interpretive issue with the modifier "current customer bases."

Indeed, this reading of the geographic limitation is the only one that sensibly comports with the national character of the business that George sold. The record establishes that when George conducted the business, he advertised his muzzle brakes via nationally-distributed trade publications, mail order catalogues, and, importantly, the Internet. In addition, George does not contest that he marketed his products and enjoyed sales throughout

_____

15.51(c)(Vernon 2002 & Supp. 2004).

the United States.  Accordingly, to interpret this provision as requiring the parties to restrict the geographic limits of the covenant to just those states in which George had actually consummated one or more sales, while disregarding the nationwide scope of his marketing efforts, would be legally absurd.  We are convinced that the court's interpretation of the geographic limitation is correct and that extending the coverage of the covenant to the fifty states of the Union is reasonable and comports with the objectively determined intent of the parties.  The district court properly enjoined George from manufacturing and marketing his muzzle brakes within that geographic area.[20]

### III. CONCLUSION

No genuine issue of material fact exists as to whether George abandoned his rights to the VAIS mark in selling his business to Bartlett and relocating to Greece.  We affirm the district court's grant of summary judgment and entry of permanent injunction in favor of Vais Arms, Inc. on its trademark claims.  Further, we also agree that the geographic limitation imposed by the non-compete agreement

---

[20] Texas courts have upheld nationwide geographic limitations in non-compete agreements when it has been clearly established that the business is national in character.  See, e.g., Williams v. Powell Elec. Mfg. Co., 508 S.W.2d 665, 668 (Tex. App. – Houston [14th Dist.] 1974, no pet.)(enforcing five-year national restriction in favor of manufacturer upon finding that manufacturer's business was "national in character"; "[A] national injunction is reasonable, since it is necessary to protect the national business sold from competition.  In an era of national and international corporations, a modern court of equity cannot feel constrained by past precedents involving the sale of barber shops and livery stables.").

as reformed by the district court is reasonable and enforceable. We affirm the district court's grant of summary judgment on Vais Arms, Inc.'s claim for breach of the non-compete agreement, as well as the court's entry of a permanent injunction enforcing that agreement against Defendant-Appellant George Vais.

AFFIRMED.

CHARLES W. PICKERING, SR., Circuit Judge, concurring in part and dissenting in part.

I concur in all aspects of the majority opinion except the part dealing with the non-compete clause.  In Texas, "[c]ourts generally disfavor noncompete covenants because of the public policy against restraints of trade and the hardships resulting from interference with a person's means of livelihood." *Zep Mfg. Co. v. Harthcock*, 824 S.W.2d 654, 658 (Tex. App.– Dallas 1992). I recognize that it is possible to have a valid non-compete clause; however, I would conclude that there is an ambiguity in this particular non-compete clause.  A contract is ambiguous when its meaning is reasonably susceptible to more than one interpretation.  *Heritage Res. Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996).  In this case, the agreement states that "[t]his covenant shall apply to the geographical area that includes all U.S. states and countries which are included in the current customer base."  The phrase "which are included in the current customer base" could be read to apply only to the word "countries", or it could be read to apply to "all U.S. states and countries."  Because the phrase is susceptible to more than one reasonable interpretation, the issue should be remanded to the district court for an appropriate determination.  *See Exxon Corp. v. West Texas Gathering Co.*, 868 S.W.2d 299, 302 (Tex. 1993) (explaining that contract ambiguities are fact questions to be submitted to a jury).

For the foregoing reasons I respectfully dissent as to that part of the majority opinion dealing with the non compete clause.