**Opinion issued August 23, 2018**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-16-00415-CV

———————————

**RAFAEL ORTEGA, ROSARA INVESTMENTS, LLC, LMMM HOUSTON #50 LTD., AND SOGA INVESTMENTS, LTD., Appellants**

**V.**

**AMIN ABEL, MOHAMAD MUSTAFA, SAEED ABDEL FATAH, IHAB ABOUSHI, HANNA HINNAWI, SAMEERA ABEL, AMY LATIF, JOANN BARGHOUT, SUPER BRAVO, INC., BRAVO RANCH, INC., ABEL, INC., AND HOUSTON BRAVO, INC., Appellees**

---

**On Appeal from the 269th District Court**
**Harris County, Texas**
**Trial Court Case No. 2012-70156**

---

## DISSENTING OPINION

This case arose from the sale of a business, freely and voluntarily entered into

by all parties. The business sold groceries in a specific market, Hispanic themed

grocery stores. The sale was an arm's length transaction for valuable consideration, $7.5 million. The contract of sale contained a non-competition agreement. Not only was this agreement also freely and voluntarily entered into, but the "Sellers [were] represented by counsel throughout the negotiation of this agreement. . . ." Para. 6, Non-Competition Agreement. The non-competition agreement was an important part of the deal because the sellers were experienced and actively involved in the niche market and their continued use of this knowledge and experience "would seriously, adversely and irreparably affect the ability of the Buyers to derive the benefit or value for which it bargained in the Asset Purchase Agreement." Para. A, Non-Competition Agreement. Therefore, the agreement was "a material inducement to the Buyers to consummate the transactions contemplated by the Asset Purchase Agreement, and the Buyer would be unwilling to consummate such transactions if either Sellers did not enter into this Agreement." Para. D., Non-Competition Agreement. The non-competition agreement was material enough to the sale that the buyers specifically paid $1.7 million for it. Para. 2, Asset Purchase Agreement.

The jury found that the sellers had breached the contract of sale and violated the non-competition agreement. The jury awarded over $21 million in damages and found that the sellers had acted in such bad faith and malice that they awarded approximately $5.2 million in punitive damages. All damages were taken away by

the trial court when it reformed the non-competition agreement by reducing its scope.

This non-competition agreement satisfied the statutory requirement that it be part of "an otherwise enforceable agreement." TEX. BUS. & COM. CODE ANN. § 15.50(a) (West 2011). It is not seriously contested, and the majority opinion holds, that the non-competition agreement is enforceable. However, the trial court and the majority hold that the agreement is too broad in scope and must be narrowed before it can be enforced. An enforceable non-competition agreement must have a scope that is no broader than necessary "to protect the goodwill or other business interest of the promisee." *Id.* The trial court, in a decision sustained by the majority, did this by interpreting the transaction to be the sale of 5 grocery stores and limiting the scope of the non-compete to a 3-mile radius around the five stores. I respectfully submit that this misconstrues the business deal that is our focus. It is true that the business operated out of five stores at the time of the purchase. However, it is clear from the record and the documents through which this purchase was affected, that the purchase was not merely of five stores, standing alone, but it was the purchase of a business that was competing with the buyers in the specialty market of Hispanic themed grocery stores. The non-competition agreement was not to free the buyers from competition with the former operators of Mi Rancho only in the neighborhood of the five Mi Rancho stores, but to free the buyers from such competition in that

part of its market area covered by the agreement. Courts applying Texas law have upheld non-competition agreements ancillary to the sale of a business with far larger geographical scope than the one we are reviewing. In specialty, or niche markets, courts have particularly upheld statewide[1] and, indeed, nationwide[2] restrictions as necessary to accomplish their lawful purpose. This lengthy and carefully worded purchase agreement, and its ancillary non-competition agreement, negotiated between sophisticated parties, with counsel available, for which money was paid, appears to be narrowly tailored to accomplish just that.

The promisor bears the burden of establishing that the non-competition agreement does not meet the criteria set out in section 15.50. *See* TEX. BUS. & COM. CODE ANN. § 15.51(b) (West 2011). The sellers attempted to do that through the testimony of a marketing expert who examined the five stores and opined as to the geographical scope of the market share of the five stores. The analysis treated each store as a stand-alone business, which completely misses the mark. The purpose of the transaction was not merely the purchase of five stores, it was the purchase of the Mi Rancho business and the elimination of the competition of the former operators of that business from the areas covered by the non-competition agreement. The jury

---

[1]     *Caraway v. Flagg*, 277 S.W.2d 803, 806 (Tex. Civ. App.—Dallas 1955, writ ref'd n.r.e.).

[2]     *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 295 (5th Cir. 2004).

heard this evidence and the defense used it in their argument on damages. We can infer from the verdict that the jury was unmoved by this testimony. I agree with the jury. The sellers are required to establish that the scope of the non-competition agreement is unreasonable. I believe they failed to carry that burden. I would reinstate the jury's verdict in its entirety and respectfully dissent from the holding of the majority. "The role of the courts is not to protect parties from their own agreements, but to enforce contracts that parties enter into freely and voluntarily." *El Paso Field Serv., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 810–11 (Tex. 2012). A deal is a deal.

Russell Lloyd
Justice

Panel consists of Justices Higley, Massengale, and Lloyd.

Lloyd, J., dissenting.